644 P.2d 271

Antonio RIVERA and Manuel Molina,
Plaintiffs/Appellees,

v.

CITY OF DOUGLAS, Arizona, a municipal corporation; Bill R. DaVee, City Manager of the City of Douglas, Arizona, in his official capacity, Defendants/Appellants.

No. 2 CA–CIV 4140.

Court of Appeals of Arizona,
Division 2.

Feb. 18, 1982.

Rehearing Denied March 24, 1982.

Review Denied April 13, 1982.

118

Ramon R. Alvarez, Douglas, for plaintiffs/appellees.

Ruben S. Teran, Douglas City Atty., Douglas, for defendants/appellants.

OPINION

HOWARD, Chief Judge.

This is an appeal from the granting of a preliminary injunction which prohibited the City of Douglas from requiring that two employees take a polygraph examination under threat of dismissal. We reverse.

On October 8, 1980, City of Douglas Public Works Director Ben LaForge, observed appellees and several other crew members in an area of town which was in an opposite direction from where they were supposed to be working. Because he found this irregular, he questioned both men concerning the incident and was told by Molina that his men were used for a few minutes to place a grill on a fireplace at Mr. Rivera's house. Appellees now deny any involvement in this incident.

At the same time, the City of Douglas received an anonymous phone call that appellees were engaged in personal projects while on city time. The city manager then commenced a formal investigation. Reports submitted concerning the incident were inconclusive and upon the advice of the chief of police and the city attorney, the city manager sent appellees a letter which contained the following directive:

"You are hereby ordered to submit to polygraph examination as part of a continuing internal investigation into the above matter. The polygraph examination will deal with such questions as may be related specifically and narrowly to the performance of your duties and that of your associates on October 8, 1980. The answers contributed by you will not be used against you in any criminal prosecution. However, the answers given may be used against you in any subsequent personnel action with regard to your position with the city.... Refusal on your part to take the examination at the time and place specified will result in immediate termination or suspension."

Both employees filed a complaint under the Uniform Declaratory Judgment Act, A.R.S. § 12–1831 et seq., seeking injunctive relief from having to submit to the polygraph. The court enjoined appellants from discharging appellees until further order from the court.

The issues presented on this appeal are as follows: (1) Did the superior court have jurisdiction to hear appellees' complaint and render a preliminary injunction? (2) May an employee of a municipal corporation be ordered to submit to a polygraph examination upon penalty of dismissal over objection based upon his Fifth Amendment right against compulsory self-incrimination? (3) Was appellants' conduct in ordering appellees to submit to a polygraph examination unreasonable, arbitrary, or capricious?

## JURISDICTION

Appellants' argument that appellees did not have a justiciable controversy stems from the fact that appellees did not ever refuse to take the polygraph test, nor were they ever actually dismissed. It contends further that appellees were only seeking an advisory opinion in regards to events which may never happen. We disagree.

■ Declaratory judgment relief is an appropriate vehicle for resolving controversies as to the legality of acts of public officials. *Riley v. County of Cochise*, 10 Ariz.App. 55, 455 P.2d 1005 (1969). However, in order to be entitled to relief, a plaintiff must have a protectible interest such as a legal relation, status or right and an assertion of the denial of it by the other party. *Riley v. County of Cochise*, supra. Furthermore, injunction is an appropriate remedy to determine whether rights have been or will be affected by arbitrary or unreasonable action of an administrative officer or agent. *Wales v. Tax Commission*, 100 Ariz. 181, 412 P.2d 472 (1966); *Town of Paradise Valley v. Gulf Leisure Corporation*, 27 Ariz.App. 600, 557 P.2d 532 (1976). Public officers may therefore be enjoined from acts which are beyond their power. *Williams v. Superior Court*, 108 Ariz. 154, 494 P.2d 26 (1972); *Foster v. Thunderbird*

*Irrigation Water Delivery District of Pinal County*, 125 Ariz. 324, 609 P.2d 594 (App. 1980).

■ In this action, appellees received letters from a city officer ordering them to take a polygraph examination and further stating that refusal would result in immediate termination. We find that appellees had a protectible interest in their employment which was threatened by acts of a public official that they considered unconstitutional. They were therefore entitled to seek injunctive relief, and a declaration of their rights under § 12–1831.

## THE FIFTH AMENDMENT

■ The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." This clause was held to be applicable to the states by reason of the Fourteenth Amendment in *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The amendment not only protects the individual in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. *Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); *McCarthy v. Arndstein*, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924).

The interaction of the privilege against self-incrimination with the right of the government to oversee the official activities of its employees has been the subject of several decisions of the Supreme Court. In *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), police officers were questioned concerning the alleged fixing of traffic tickets. They were warned that if they didn't answer they would be dismissed and that what they said could be used against them. No immunity of any kind was offered or available under state law. The officers gave statements which were subsequently used against them in criminal proceedings over their objections. The court held that the statements were

coerced under threat of discharge and could not be used in criminal prosecutions. The court also held that in the context of threats of dismissal, the act of responding to interrogation was not voluntary and not an effective waiver of the privilege against self-incrimination.

In a companion case, *Spevack v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), the plurality opinion held that a lawyer could not be disbarred for asserting the privilege. In concurrence, Justice Fortas distinguished that situation from one where a public employee is asked questions specifically, directly, and narrowly relating to performance of his official duties.

The next year, two more cases on this subject were heard. In *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968), the issue was whether a policeman who refused to waive his right against compulsory self-incrimination could be removed from office because of this refusal. Answering this question in the negative, the Court then went on to state:

> "If appellant, a policeman, had refused to answer questions specifically, directly, and narrowly relating to the performance of his official duties, without being required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself, *Garrity v. New Jersey*, supra, the privilege against self-incrimination would not have been a bar to dismissal." 392 U.S. at 278, 88 S.Ct. at 1916.

The companion case, *Uniformed Sanitation Men Association, Inc. v. Commissioner of Sanitation of the City of New York*, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968) was to the same effect as *Gardner*, but involved public employees, not policemen, who were advised that refusal to answer questions and waive immunity would

lead to dismissal. Characterizing this as a choice between surrendering their rights or their jobs, the Court held such a choice to be an impermissible one, although clearly they would "subject themselves to dismissal if they refuse to account for their performance of their public trust, after proper proceedings, which do not involve an attempt to coerce them to relinquish their constitutional rights." 392 U.S. at 285, 88 S.Ct. at 1920.

The last in this line of Supreme Court cases is *Lefkowitz v. Turley*, supra, which involved architects under contract to the state. When asked to testify to a grand jury, they refused to sign waivers of immunity and as a consequence had their contracts canceled pursuant to a New York statute which required such action upon a refusal to waive immunity. Again the Court found that a state cannot compel testimony through a threat of substantial economic sanctions without granting immunity. The Court did make clear, however, that:

> "[T]he Constitution permits that very testimony to be compelled if neither it nor its fruits are available for such [criminal proceedings] use. [citation omitted] Furthermore, the accommodation between the interest of the State and the Fifth Amendment requires that the State have means at its disposal to secure testimony if immunity is supplied and testimony is still refused." 414 U.S. at 84, 94 S.Ct. at 325.

What these cases say about disclosures that may constitutionally be requested of public employees extends, we think, to disclosure through the medium of a polygraph test. Numerous jurisdictions, including Arizona, have upheld the use of a polygraph in internal investigations concerning police and firemen.[1] In *Eshelman v. Blubaum*,

---

1. See: *Grabinger v. Conlisk*, 320 F.Supp. 1213 (N.D.Ill.1970); *Eshelman v. Blubaum*, 114 Ariz. 376, 560 P.2d 1283 (1977); *Fichera v. State Personnel Board*, 217 Cal.App.2d 613, 32 Cal. Rptr. 159 (1963); *Florida Department of Highway Safety v. Zimmer*, 398 So.2d 463 (Fla.App. 1981); *Coursey v. Board of Fire and Police Commissioners*, 90 Ill.App.2d 31, 234 N.E.2d

339 (1967); *Roux v. New Orleans Police Department*, 223 So.2d 905 (La.App.1969); *Baker v. City of Lawrence*, 379 Mass. 322, 409 N.E.2d 710 (1979); *Dolan v. Kelly*, 76 Misc.2d 151, 348 N.Y.S.2d 478 (1973); *Richardson v. City of Pasadena*, 500 S.W.2d 175 (Tex.Civ.App.1973), rev. on other grounds, 513 S.W.2d 1 (Tex.1974); *Talent v. City of Abilene*, 499 S.W.2d 724 (Tex.

114 Ariz. 376, 560 P.2d 1283 (1977), Division One of this court held that an officer could be dismissed for refusal to take a polygraph examination during an internal investigation of the sheriff's department. The court below denied *Eshelman* as controlling precedent over this action because the immunity statute in Arizona at that time (A.R.S. § 13–1804) was different than the present one (A.R.S. § 13–4064), and the court questioned (1) whether the "use" immunity under the new statute was sufficient protection and (2) whether a municipality, rather than a court, had the power to grant immunity under either statute.

■ The grant of immunity to supplant the privilege against compulsory self-incrimination, must be coextensive with the scope of the privilege. *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Immunity from use and derivative use is coextensive with the scope of the privilege and is sufficient to compel testimony over a claim of privilege, and therefore, transactional immunity is not required. *Kastigar v. United States*, supra. See also, *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). "Use" immunity from prosecution, therefore, preserves the sanction of discharge for failure to account for the employee's job performance. *Uniformed Sanitation Men Association, Inc. v. Commissioner of Sanitation of New York*, 426 F.2d 619 (2nd Cir. 1970); *Marsh v. Civil Service Commission of Lorain*, 64 Ohio App.2d 151, 411 N.E.2d 803 (1977); *Lefkowitz v. Turley*, supra.

■ "Use" immunity thus suffices to permit the discharge of a public employee who refuses to answer questions about his conduct on the ground of self-incrimination, without a statute authorizing it. *Uniformed Sanitation Men Association, Inc. v. Commissioner of Sanitation of New York*, supra. In *Garrity v. New Jersey*, supra, there was none, yet the Court held that "the protection of the individual under the Fourteenth Amendment against coerced

Civ.App.1973), rev. on other grounds, 508 S.W.2d 592 (Tex.1974); *Seattle Police Officers*

statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that extends to all, whether they are policemen or other members of our body politic." 385 U.S. at 500, 87 S.Ct. at 620. As Justice Black said in *Adams v. Maryland*, 347 U.S. 179, 74 S.Ct. 442, 98 L.Ed. 608 (1954), "Indeed, a witness does not need any statute to protect him from the use of self-incriminatory testimony he is compelled to give over his objection. The Fifth Amendment takes care of that without a statute." 347 U.S. at 181, 74 S.Ct. at 445.

■ While recognizing that decisions of the vast majority of jurisdictions which have upheld the use of polygraphs for internal investigations involved police or firemen, we cannot perceive under a Fifth Amendment claim of privilege, why these same principles should not apply to other public employees. Indeed, of the two cases we were able to locate involving other public employees and a compulsory use of the polygraph, neither addressed an issue of a Fifth Amendment claim. *McGinigle v. Town of Greenburg*, 425 N.Y.S.2d 61, 401 N.E.2d 184, 48 N.Y.2d 949 (1979), (upheld the right of the city to take the examination); In the *Matter of Fairbanks*, 287 N.W.2d 579 (Iowa 1980), (disallowed the examination). We do emphasize the fact that in order to escape Fifth Amendment objections, the proceedings must conform to the notification requirements of *Eshelman*, (1) that the questions will relate specifically and narrowly to the performance of his official duties; (2) that the answers cannot be used against him in any subsequent criminal prosecution; and (3) that the penalty for refusing is dismissal. In other words, the employee must be duly advised of his options and the consequences of his choice. The employees (appellees) in this action were so notified and we find no Fifth Amendment violation in the directive that they submit to a polygraph examination under those conditions.

*Guild v. City of Seattle*, 80 Wash.2d 307, 494 P.2d 485 (1972).

## UNREASONABLE, ARBITRARY OR CAPRICIOUS

An order to submit to a polygraph examination is improper if that order is unreasonable, arbitrary or capricious. *Eshelman v. Blubaum*, supra. The court below in its conclusions of law stated the following: "The request of the Defendant CITY OF DOUGLAS to the Plaintiff to submit to a polygraph examination was unreasonable, arbitrary and capricious in that the demand for the polygraph examination arose out of an alleged incident wherein Public Work employees were used for a few minutes to place a barbecue grate on the barbecue grill owned by the Plaintiff RIVERA at his home." We disagree.

There had been a charge that city employees were using city time and personnel to perform personal duties. This would be in direct violation of the public trust. When questioned concerning why he had ordered the polygraph testing, the city manager stated the following:

"No, there was no one pushing me to do it. My main concern was to clear the record, both for the employees and for the management of the city since there was conflicting statements in the record that this occur. Conflicting statements by the people who are alleged to have done this and one of the department heads.

\* \* \* \* \* \*

Yes, I think the recent history in the community of Douglas was that in alleging back to the recent recall, certainly misconduct of employers and in officers, —Well, I felt that the mood of the community being as it was in the recent past that this matter should also be resolved.

\* \* \* \* \* \*

After counseling with the Chief of Police, I determined that the only reasonable, logical way to bring it to a conclusion was to request that each of the parties be offered the opportunity to take the polygraph examination."

At this point he had exhausted his investigative tools and saw the polygraph as an alternative. But, before he did so, he also consulted with the city attorney to determine if this were proper. Only upon the advice of the attorney that it was did he order the testing. We do not see how such an order under the circumstances was unreasonable, arbitrary or capricious.

Reversed.

HATHAWAY and BIRDSALL, JJ., concur.