748 P.2d 1195

Shirley BRITT and Paul Parido, Plaintiffs–Appellees, Cross Appellants,

v.

RED MESA UNIFIED SCHOOL DISTRICT NO. 27, COUNTY OF APACHE, Wallace Todacheeny, Bob Cook and Dick Sagoney, individually and in their capacities as the members of the Governing Board of said District, Defendants–Appellants, Cross Appellees.

No. 1 CA–CIV 8203.

Court of Appeals of Arizona, Division 1, Department C.

Sept. 25, 1986.

Hufford and Horstman, P.C. by Margaret A. McCullough, Flagstaff, for plaintiffs-appellees, cross appellants.

Ruzow & Sloan by Lawrence A. Ruzow, Allen Sloan, Flagstaff, for defendants-appellants, cross appellees.

## OPINION

EUBANK, Presiding Judge.

This appeal involves the construction of A.R.S. § 15–458, which authorizes the subdivision of an existing school district into two separate districts. It also concerns the impact of such a subdivision on the tenure and probationary status of teachers from the old district who contract to teach for the new subdivided district.

Shirley Britt (Britt) was a "continuing teacher," with tenure, in the Chinle Unified School District No. 24 (Chinle District). Paul Parido (Parido) was a "probationary teacher," without tenure, in the Chinle District. See A.R.S. § 15–501(A). Both teachers had taught school in the Chinle district during the 1982–1983 school year. Early in 1983, the necessary petitions were submitted to the governing board of Chinle District to subdivide the district, pursuant to A.R.S. § 15–458, and to create a new, separate school district to be called the Red Mesa Unified School District No. 27 (Red Mesa District). The Chinle District governing board approved the petitions for subdividing the district and transmitted them to the Apache County School Superintendent, who adjusted the school district boundaries and notified the board of supervisors of the formation of the new district. In February 1983, the county school superintendent appointed two school trustees to the governing board of the new Red Mesa District, and in March the third trustee was appointed.

On March 4, 1983, the board held its first organizing meeting. The board appointed a superintendent and requested the Chinle District to assign Mr. Alan Wright to Red Mesa District as an administrative assistant to the superintendent. Mr. Wright was

to perform the duties necessary to organize Red Mesa District so that it would become · operable as of July 1, 1983. At the meeting, the board adopted a Resolution on Organization and Transition which stated in part:

We have chosen to make a statement indicating the direction we hope to provide for our new district in the days, months and years ahead. In order to provide a firm understanding of our commitment to quality education and to eliminate as much as possible, the uncertainty and negative speculation currently existing, we are making this statement in the form of a resolution as follows:

\*       \*       \*       \*       \*       \*

6. This Board is under no legal obligation to accept contractual agreements made by other governing boards. This Board recognizes this poses a potential threat, whether real or imagined, to the tenure status of teachers with the result of creating an atmosphere of tension that is not conducive to good education. This Board wants to reassure the teachers of this district in the following manner:

A. This Governing Board will "recognize" the tenure status, including leave and salary conditions of all teachers who are currently teaching in the attendance centers constituting the new Red Mesa Unified School District No. 27. Mr. Wright will be directed to address any specific questions on this matter in consultation with the Apache County Attorney's Office.

B. The Governing Board is directing Mr. Wright at this time to prepare a letter to all teachers who are currently teaching in the attendance centers constituting the new Red Mesa Unified School District No. 27 requesting them to indicate their intention to either remain in the old district or become an employee of the new district. This letter is to be returned to Mr. Wright prior to March 25, 1983.

\*       \*       \*       \*       \*       \*

D. Letters will be delivered to all teachers stating our intentions to ei-

ther issue or not issue contracts prior to April 15, 1983.

On April 5, 1983, Mr. Wright sent a memorandum to the Chinle District's certified teaching staff stating that the governing board of Red Mesa District would "recognize the tenure status, including leave and salary conditions of all teachers who are currently teaching in the attendance centers constituting the new Red Mesa Unified School District No. 27." Both Britt and Parido were offered contracts for the 1983–84 school year in the new Red Mesa District. They executed the offered agreements and taught school in the District during the 1983–84 school year. In April 1984, however, Britt and Parido were notified by the governing board that they would not be given contracts for the 1984–85 school year. The reasons for the board's actions were set out in the notices. Britt and Parido requested hearings but their requests were denied. Due to the denial of hearings, Britt and Parido filed this action against Red Mesa District and its governing board in the superior court asking for a declaratory judgment construing their tenure status with the district, for injunctive relief, and for relief based on other claims which are still pending. By consent of all parties, the declaratory judgment and injunction request were tried to the court without a jury. Following a trial, the judge made findings of fact, conclusions of law and entered judgment in Britt's favor against Red Mesa District. The court ruled against Parido, but held that neither Britt nor Parido were tenured teachers in the Red Mesa District. The trial court made the judgment immediately appealable by entering Rule 54(b), Arizona Rules of Civil Procedure, language and Red Mesa District appealed from the judgment; Britt and Parido have cross-appealed from that part of the judgment holding that they do not have tenure status in Red Mesa District.

Red Mesa District characterizes the action taken by the trial court in its judgment as awarding "de facto tenure" to Britt. It argues that, as a matter of law, Red Mesa District did not have authority to award

Britt de facto tenure, and even if it did have such authority, the district did not have such authority prior to the date that the district became *operative* on July 1, 1983. Since the district actually contracted with Britt and Parido before July 1, 1983, it also contends that the contracts were void.

Counsel for Britt and Parido counter the district's arguments by contending that Red Mesa District was not limited or restricted by A.R.S. § 15–458 from organizing the district, adopting a budget, contracting with teachers, etc., prior to July 1st in order to become "operative" on July 1, 1983, as required by A.R.S. § 15–458. Thus, they argue that the contracts were legal contracts, that both Britt and Parido have tenure, and that both were denied their vested tenure rights by Red Mesa District. The cross-appeal argues that the trial court erred as a matter of law in concluding that neither Britt nor Parido had tenure in the Red Mesa District.

The parties were unable to locate any case authority construing A.R.S. § 15–458. We have also been unable to find any authority. Thus, this appeal is one of first impression in Arizona.

### I. A.R.S. § 15–458

We must begin with the applicable statute as it read when the districts subdivided in 1983. (All of the following cited sections to A.R.S. are as they were in 1983). The statute in 1983 read:

§ 15–458. Formation of new district by subdivision of existing district; entitlement to monies; failure to open school

A. In a school district containing a student count of more than two hundred fifty, a new school district may be formed by a subdivision of the old one upon a petition signed by fifty-one per cent of the qualified electors of the original school district. The petition shall set forth the proposed boundaries of the school district to be formed together with the student count and the amount of real property valuation within the school district to be formed. No new school district may be formed unless the real property valuation per student count is suffi-

cient to support the school in a manner comparable to other school districts of similar size.

B. The petition shall be presented to the governing board of the original school district for approval or disapproval. If approved, the petition shall be endorsed by the governing board and transmitted to the county school superintendent who shall make his record of boundaries conform and shall notify the board of supervisors of the formation of the new school district and its boundaries. The new school district shall become operative on July 1 next after the date upon which the petition is approved.

C. No new school district formed by a subdivision of an old school district is entitled to any share of the public monies belonging to the old school district until a school has been actually commenced in the new school district. Unless within six months after the making of the order creating a new school district a school is opened therein, the order shall be void.

Laws 1981, ch. 1, § 2.

■ The intention of the legislature in enacting this statute is clear enough. It is authorizing the "subdivision" of an existing school district where certain condition precedents are met: student count (250), petition of 51% of qualified electors of the "original school district," etc. The major area of contention between the parties both here and in the trial court centers on the legislature's use of the word "operative." The word is used in the last sentence of A.R.S. § 15–458(B). It reads, "The new school district shall become operative on July 1 next after the date upon which the petition is approved." As noted above, Red Mesa District contends that July 1 is the date of existence of the new district and any contract executed by the Red Mesa District prior thereto is void, while Britt and Parido contend that the statute merely means what it says—that the new district begins school operations on July 1.

We agree with Britt and Parido. July 1 has great significance in Arizona school law. The "school year" by statute begins on July 1 and ends on June 30. A.R.S.

§ 15–801. The school "fiscal year" begins on July 1 and ends on June 30. A.R.S. § 15–101. The entire school budgetary system is directed to close on June 30 of the "budget year" and to open on July 1 of the new budget year, in the same manner as the state budget operates. A.R.S. § 35–102. See A.R.S. §§ 15–903, 904, 905, 906 and 907 (1981). "Operative" means to produce an appropriate effect; exerting force or influence; having to do with physical operations. Webster's Ninth New Collegiate Dictionary (1985). In the context used here, together with the July 1 date, it means to begin educational operations for the school year. Thus, it is clear to us that the legislature intended Red Mesa District to become "operative" on July 1, but they intended no statutory limitation preventing the governing board of Red Mesa District from organizing the district for school year operations to commence on July 1. Indeed, if Red Mesa's contention was correct, it might have been impossible for it to recruit qualified teachers subsequent to July 1. Furthermore, A.R.S. § 15–502 authorizes the governing board to employ and fix salaries of teachers for the succeeding year "at any time." Goren v. Buena High School District of Cochise Co., 91 Ariz. 348, 372 P.2d 692 (1962).

■ The next question is when did Red Mesa District become a legally existing or formed district? A.R.S. § 15–458(B) provides that when the approved petition is transmitted by the governing board to the county school superintendent, the superintendent "shall make his record of boundaries conform and shall notify the board of supervisors of the formation of the new school district and its boundaries." This provision is a special law and supercedes the general law, A.R.S. § 15–442, which restricts any boundary change after July 1. Thus, the record shows that Red Mesa District was formed in February 1983, and that the district was authorized to act when the majority of the governing board was appointed on February 25, 1983 by the county school superintendent pursuant to A.R.S. § 15–302(7). Cf. Goren v. Buena High School District of Cochise Co., supra.

This brings us to the organizational meeting of the governing board held on March 4, 1983. Since we have held that the Red Mesa District was formed and authorized to act on February 25, 1983, it follows that the governing board had authority to take the actions that it did at the March 4th meeting, including the adoption of the Resolution on Organization and Transition set out in part above. Further, the board had authority, pursuant to A.R.S. § 15–502, to contract with both Britt and Parido for teaching services for the 1983–84 school year prior to July 1.

## II. THE RED MESA DISTRICT

The trial judge concluded that neither Britt nor Parido had tenure in the Red Mesa District. Then, apparently on the basis of Perry v. Sinderman, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the trial court found that Britt possessed "a constitutionally protected property interest" based on the governing board's promise by resolution to recognize tenure status acquired in the Chinle District by certified teachers who contracted with Red Mesa District for the 1983–84 school year. This is the "de facto tenure" opposed by Red Mesa District. Since the trial court found that Parido was not a tenured teacher in the Chinle District, the court held that he was not entitled to receive the rights of a tenured teacher when terminated at the end of the 1983–84 school year by Red Mesa District.

While we agree with the result reached by the trial court involving Britt, we disagree with the legal basis used to reach that result. We also disagree with the result reached concerning Parido. First, we note that Britt was a continuing teacher and Parido was a probationary teacher in the Chinle District during the 1982–83 school year. Under the Arizona Teacher's Tenure Act a continuing teacher is defined as a full time teacher whose contract has been renewed for four consecutive years by the district. (A.R.S. § 15–531 et seq.). A continuing teacher's rights are statutorily vested. Godbey v. Roosevelt School

*District No. 66,* 131 Ariz. 13, 638 P.2d 235 (App.1981). On the other hand, a probationary teacher has no vested right beyond his teaching contract for the school year. A.R.S. § 15–536. Therefore, if Britt had remained in the Chinle District, where she was a continuing teacher, she would have been entitled to a hearing pursuant to A.R.S. §§ 15–539, 15–541. It is equally clear that Parido would also have been a continuing teacher in the Chinle District because the 1983–84 school year was his fourth consecutive contract year. A.R.S. § 15–501(A)(3).

This brings us to the basis of the problem which resulted in this appeal: What is the tenure relationship of Britt and Parido to the subdivided Red Mesa District? A.R.S. § 15–458, *supra,* does not expressly address this question. However, we believe that the intention of the legislature can be ascertained from the statute. Certainly the legislative spirit of the enactment is clear and applicable to the question. *See City of Phoenix v. Superior Court,* 101 Ariz. 265, 419 P.2d 49 (1966). The legislature enacted A.R.S. § 15–458 to enable fifty-one percent of the qualified electors of a school district to subdivide the district with the consent of the governing board. When this subdivision occurs the new district arises out of, or is created from the old district. The new district under the statutory scheme is much like a newborn child who is dependent on its parents for all of its needs. The new district is dependent on the goodwill of the old district for assistance of every kind of administration, finance, personnel, etc., until the new district becomes operative on July 1. Further, A.R.S. § 15–458(C) provides that Red Mesa District is not "entitled to any share of the public monies belonging to the old district until *a school has actually commenced* in the new school district." (Emphasis added). A.R.S. § 15–458(C) further provides that Red Mesa District is "void" unless a school is opened within six months of the order creating the new district. Thus, the legislature also imposed conditions subsequent to the formation of the new district. If these conditions are not met the new district is voided, and the

new district again becomes part of the old district. In later amendments of A.R.S. § 15–458, the legislature has added additional subsequent conditions and requirements such as the division of assets, liabilities, and bonded indebtedness between the old and new districts (Laws 1984, ch. 168, § 1). Additionally, the statute now requires an election of the qualified electors in order to subdivide an existing district (Laws 1985, ch. 238, § 6).

■ Thus, by enacting A.R.S. § 15–458 the legislature has created a special relationship between the new Red Mesa District and the old Chinle District, whereby Red Mesa District is only completely separated from the Chinle District when all of the statutory requirements are met. While we agree with the parties that Red Mesa District was under no legal obligation to contract with either Britt or Parido to teach in the new district for the ensuing school year 1983–84, the district, having elected to contract with them, was required to accept their tenure status as it stood in the Chinle District. In our opinion, this conclusion is implied in the special relationship that the legislature has created between the districts in the statute, and arises from the spirit of the legislation itself. We hold that the tenure status acquired by Britt and Parido in Chinle District is continued in the new Red Mesa District. Our holding avoids the "de facto tenure" problem raised by Red Mesa District.

### III. BRITT—PARIDO'S REMEDY

The trial court ruled, in effect, that Red Mesa District had violated Britt's rights by not providing her with a meaningful hearing on the basis for the governing board's refusal to offer her a teaching contract for the 1984–85 school year. The only relief granted Britt under the judgment, however, was to require Red Mesa District to hold a hearing. The court gave Parido no relief. On cross appeal Britt and Parido request that they be reinstated under their contracts, that they be paid all back salary and benefits, and that they be awarded their attorney's fees and costs.

■ In our opinion, both Britt and Parido must be accorded additional relief. Un-

der A.R.S. § 15–536 the governing board was required to offer Britt and Parido contracts for the 1984–85 school year and the following school years unless dismissal charges were first served on them and the opportunity of a hearing was accorded each of them, pursuant to A.R.S. §§ 15–538, 15–539. Although notice was given Britt and Parido by the board, no proper hearing was accorded them. Consequently, neither Britt nor Parido has been properly or legally dismissed by the Red Mesa District. On the other hand, we have no facts before us with which to fashion a satisfactory remedy because we do not know if Britt or Parido have taken other employment during the interim period of appeal time, in which case damages could suffice. It will therefore be necessary to remand this matter for an additional hearing in order for the trial court to determine Britt and Parido's remedy.

In determining the remedy, the trial judge will want to consider the following:

1. The recent United States Supreme Court case of *Cleveland Board of Education v. James Loudermill, et al.,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) holds that when a state employee has a property interest in his employment created by state law, he has a property interest which is protected by the Due Process clause of the U.S. Constitution, and he may not be terminated from his employment without notice and a hearing. The Arizona Tenure Act gives Britt and Parido the same protection. Thus, it may be necessary to reinstate Britt and Parido in the Red Mesa District with back pay through the current teaching year in order to uphold the Due Process Clause, the legislative policy of the tenure law, and at the same time to do justice by Britt and Parido. *See Board of Trustees of Nogales Elementary School District No. 1 v. Cartier,* 114 Ariz. 96, 559 P.2d 216 (App.1977).

2. Red Mesa District argues that a mandatory injunction against the district is improper as a matter of law. We disagree. In *Rivera v. City of Douglas,* 132 Ariz. 117, 644 P.2d 271 (App.1982), Division 2 noted that an injunction can be used to enjoin public officers where rights have

been or will be affected by arbitrary or unreasonable action. Here, in this appeal, we have a governing board which arbitrarily rejected the Arizona Tenure Act to the damage of Britt and Parido, who are continuing teachers protected by it. We discussed and approved of the use of mandatory injunctions in *State ex rel. Corbin v. Portland Cement Ass'n,* 142 Ariz. 421, 690 P.2d 140 (App.1984). Thus, a mandatory injunction is available as a possible remedy.

Red Mesa also argues that the anti-injunction statute A.R.S. § 12–1802(5) applies. The statute provides that no injunction shall be granted "To prevent the breach of a contract, the performance of which would not be specifically enforced." This prohibition does not apply to a violation of a teacher's tenure contract by a governing board, which will be specifically enforced by statute and by the courts of this state. *See Board of Regents v. City of Tempe,* 88 Ariz. 299, 356 P.2d 399 (1960).

3. The school district requests its attorney's fees pursuant to A.R.S. § 12–341.01 and so does Britt and Parido. In our opinion Britt and Parido should be made whole and awarded their attorney's fees and costs, both in the trial court and here. *See Ash, Inc. v. Mesa Unified School District,* 138 Ariz. 190, 673 P.2d 934 (App.1983). *See also* A.R.S. § 15–542.

In conclusion, we grant Britt and Parido's request for attorney's fees on appeal pursuant to Rule 21(c), Arizona Rules of Civil Appellate Procedure, A.R.S. § 12–341.01, and § 15–542. Britt and Parido may establish the amount of their award by complying with Rule 21(c) and our decision in *Schweiger v. China Doll Restaurant, Inc.,* 138 Ariz. 183, 673 P.2d 927 (App.1983).

The judgment is affirmed in part, and reversed in part. This matter is remanded for further proceedings not inconsistent with this opinion.

SHELLEY and HAIRE, JJ., concur.