854 P.2d 1152

**H.B. WALLACE and Jocelyn Wallace, Plaintiffs–Appellants,**

v.

**Dr. Ivan SHIELDS, Director of the Arizona Commission of Agriculture and Horticulture, Defendant–Appellee.**

**No. 1 CA–CV 90–478.**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 24, 1992.

Reconsideration Denied April 21, 1993.

Review Denied July 7, 1993.

**168**

Law Offices of Richard E. Clark by Richard E. Clark, Scottsdale, Kern and Wooley by D.L. Greer, Mesa, and Kleinman, Carroll, Lesselyong and Novak by Cheryl L. Sivic, Phoenix, for plaintiffs-appellants.

Grant Woods, Atty. Gen. by Shirley S. Simpson, Michael J. Phalen, Asst. Attys. Gen., Phoenix, for defendant-appellee.

## OPINION

GRANT, Judge.

This unique case involves a cactus custody dispute as well as the constitutionality of Ariz.Rev.Stat. Ann. ("A.R.S.") section 3–931(C) of the Arizona Native Plants Act.

H.B. Wallace and Jocelyn Wallace ("the Wallaces") appeal from a judgment that dissolved a temporary restraining order and dismissed their complaint to enjoin the Arizona Agriculture and Horticulture Commission ("Commission") from removing eight crested saguaro cacti from an extensive collection of desert plants at their residence.

## ISSUES

The appeal raises the following issues: (1) whether A.R.S. section 12–1802(4) and (6) precluded the superior court from enjoining the Commission's efforts to enforce the Arizona Native Plants Act, A.R.S. section 3–901 *et seq.*; (2) whether the Wallaces' verified amended complaint and attachments provided evidence from which injunctive relief could reasonably be found appropriate;

(3) whether A.R.S. section 3–931(C), as applied here, violated the Wallaces' right to due process of law by permitting the Commission to seize and confiscate native plants in the Wallaces' possession without providing the Wallaces with notice and an opportunity for a hearing at which the Commission would be required to establish its legal right to seize the property; and

(4) whether A.R.S. section 3–931(C), under which the Commission constructively seized and sought to remove the cacti from the Wallaces' premises, is unconstitutional because it authorizes unlawful searches and seizures.

We have jurisdiction pursuant to A.R.S. section 12–2101(F)(2).

## FACTS AND PROCEDURAL HISTORY

The Wallaces own a collection of several hundred types and species of cacti and other desert plants from all over the world. Included are eight crested saguaro cacti that the Wallaces purchased approximately a year and a half before the instant action. These cacti have a genetic defect that causes a distinctive growth of a unique crest formation at the top. Both the Commission and the United States Fish and Wildlife Service maintain records and photographs of all known crested saguaros.

In late July of 1989, through an anonymous telephone call to the United States Fish and Wildlife Service, the Commission learned that a number of crested saguaro cacti on the Wallaces' property had allegedly been stolen from federal, state and private lands. Larry Richards, an employee of the Commission, later allegedly identified four crested saguaros on the Wallaces' land as having been stolen from federal land, seven as having been stolen from state trust land, and one as having been stolen from private property.

At all times material to this action, the Commission administered the Arizona Native Plants Act, A.R.S. section 3–901 *et*

*seq.*[1] A.R.S. section 3–931 of the Act at the time provided in part:

A. An employee, officer or agent of the commission may enter in or on any premises or other place, train, vehicle or other means of transportation within or entering this state, if he has reason to believe there is present or on such premises or means of transportation a protected native plant taken, transported or possessed in violation of this chapter.

. . . .

C. *In the enforcement of this chapter, a peace officer or an officer or employee of the commission* may make arrests without warrant for a violation of this chapter which he may witness and *may confiscate, or seize by the attachment of a "warning hold" notice, any protected native plant found without a valid and properly affixed tag and seal when required by this chapter,* or any plant by-product, fiber or wood from protected native plants found in the possession of a person without a valid receipt if a receipt is required under this chapter. *It is unlawful to move or otherwise handle or dispose of any protected plant or part of a plant held under a "warning hold" notice, except with the express written permission of the enforcing officer, and for the specified purpose.* Plants, by-products, fiber or wood confiscated under this subsection, if not released to the person from whom they were seized before such time, shall be disposed of by the commission or pursuant to court order at the conclusion of the proceedings.

(Emphasis added.)

On July 19, 1990, Richards obtained a warrant from the Scottsdale Justice Court to search the Wallaces' premises and seize the eight, allegedly stolen, crested saguaros. On searching the Wallaces' premises, Richards tagged the eight crested saguaros with "warning hold" notices.

On the day of the seizures, the Wallaces' counsel met with representatives of the Commission and their counsel. As a result, the Commission agreed to suspend further enforcement of the search warrant until July 31, 1990, to allow the Wallaces to discuss the situation further with the Commission staff. One of the topics discussed at the meeting was whether the eight saguaros were subject to deterioration due to "bacterial necrosis." The Wallaces took the position that they were not.

On July 27, 1990, the Wallaces' counsel and Dr. Mark Dimmitt, Plant Curator of the Arizona–Sonora Desert Museum, met with Richards and Raymond Linquidst from the Commission on the Wallaces' premises. Richards was unable to identify any active bacterial necrosis on any of the plants in the Wallaces' collection. On July 30, 1990, the Wallaces' counsel wrote to the Commission director applying for a scientific permit for the collection or requesting an additional 30–day postponement of search warrant enforcement while discussions continued. *See* A.R.S. § 3–906(B). His letter attached written materials concerning the scientific value of the collection and statements from various persons involved in horticulture and conservation expressing the opinion that the eight saguaros would very likely not survive retransplantation. The letter also stated:

We come down to the problem therefore of compensation to the State for the loss of these plants and removing the stigma of their being stolen so that they might remain in the Wallace scientific collection. As stated previously, Mr. Wallace's position is that he is willing to discuss the issue of compensation, even though he is a victim of the perpetrators of this heinous crime, and that he has already paid money for the purchase of these particular saguaros.

1. The Arizona Native Plants Act was adopted in substantially its current form by 1989 Ariz. Sess. Laws Ch. 294, section 6, effective July 1, 1990. *See id.,* § 9. Effective January 1, 1991, 1990 Ariz. Sess. Laws Ch. 374, sections 192–207 amended the Arizona Native Plants Act to transfer administrative control from the Arizona Commission of Agriculture and Horticulture to the Plant Industries Division of the Arizona Department of Agriculture. For the sake of convenience and uniformity, we refer to the defendant agency throughout as the "Commission."

The record does not reflect that the Commission has acted on this application for scientific permit.

The Wallaces' counsel was unable to contact any representatives of the Commission on July 31, 1990, and the agreed two week extension expired at midnight on that date. The next day, a representative of the Commission informed the Wallaces' counsel that the Commission's director had rejected the Wallaces' various proposals and planned to have officials of the State Land Department remove the cacti from the Wallaces' property. In response, the Wallaces' counsel wrote to the Commission in part as follows:

> Please be advised that removal of the saguaro cactuses [sic] will result in irreparable harm to hundreds of other plants in the Wallace collection. This damage is irreparable and we are seeking injunction to prevent this damage from being done. If unsuccessful, we will sue for damages as a result of the removal of the saguaro cactuses [sic].
>
> Please also note that the University of Arizona has offered to take title to the saguaros at issue to keep them in place at the Wallace collection under Mr. Wallace's care, custody and control.

The Wallaces filed the instant suit on August 1, 1990. Their complaint referred to the eight crested saguaros as "allegedly" stolen and "identified as having been" stolen. The Wallaces claimed that they had purchased the saguaros with apparently valid state tags over a year and a half before and "did not have any knowledge that they were stolen." The complaint also alleged that, if the Commission were to remove the saguaros and attempt to transplant them, the saguaros would "certainly perish," and that they were situated so close together with other cacti in the Wallaces' collection that removing them would "severely damage several hundred other of plaintiffs' cacti and property. Any damage sustained by the cacti will be irreparable."

With their complaint, the Wallaces filed a motion for a temporary restraining order without notice. Judge Howard Peterson issued a temporary restraining order on August 2, 1990. The same day, the state moved to dissolve it.

The Wallaces filed a response to the motion to dissolve the temporary restraining order, including a cross-motion for declaration that the "Native Arizona Plants" law was not yet effective or was unconstitutional. The Wallaces simultaneously filed a verified amended complaint that added the following allegation:

> Despite Plaintiffs' good faith efforts to resolve this matter, so that the cacti can be protected, the "Commission["] has refused to consider or adopt Plaintiffs' propositions. The "Commission's" actions or omissions with regard to this matter have been "arbitrary" and "capricious" in the following ways: Plaintiffs' procedural due process rights have been violated because they have not been given the opportunity to be heard; the Commission failed to give written notice of its decision to the Plaintiffs, and the Commission is ignoring the legislative intent of the Native Plant[s] Law.

Judge E.G. Noyes, Jr., heard the Commission's motion to dissolve the temporary restraining order on August 6, 1990. At that time, the Commission's counsel orally moved to dismiss the Wallaces' complaint. Before hearing argument on the Commission's motion to dismiss, the trial court heard testimony from Arizona–Sonora Desert Museum Plant Curator, Dr. Mark Dimmitt.

Dr. Dimmitt testified that he had seen the Wallace collection within the last ten days and had looked at four of the eight saguaros in question. He stated that none had any significant sign of disease and all were quite healthy. He testified that two of the cacti looked as if they had a decent chance of surviving, but that he was not very sanguine about the outcome for the other two he saw. He further testified that it was too early to tell if the Wallaces' subterranean watering system would successfully reestablish the cacti. He testified that a saguaro takes two to five years to die of transplant shock and that the saguaros in question had been transplanted less than two years before. He also testified

that saguaros fifteen or more feet tall are unlikely to survive even one transplant. Of the twenty-five saguaros that the Arizona–Sonora Desert Museum had transplanted, only one was still standing after five years; and that one did not look as if it would survive.

Arguing in support of the Commission's motion to dismiss, the Commission's counsel observed that A.R.S. section 3–906 authorized the Commission to confiscate unlawfully possessed cacti and that none of the documents that the Wallaces had presented to the court proved that the eight saguaros were legally possessed. The Commission further argued that, assuming the cacti had not already been destroyed by their original uprooting, there was no evidence that they would do less well on state trust land than in the Wallaces' care.

During the Wallaces' argument in response, the following exchanges occurred:

THE COURT: Do you contest the state's claim that those are stolen cactus?

MR. CLARK [Wallaces' counsel]: Yes, your honor, we do. We have not had the opportunity to have a hearing on that issue. We have not had the opportunity to give the background. They went to the Scottsdale Justice Court and obtained a search warrant on the basis of the affidavit of Larry Richards, who is an employee of the state, and went out and tagged the saguaros and that is the basis for which they are taking this action.

. . . .

[MR. CLARK] ... One of them we take issue with, this one—the one that was supposedly on private land. The pictures do not correspond.... This saguaro, I contend, is not the—the same as the one out—the big sandy on private land.

The seven others we have not yet come to grips with the evidence presented, and furthermore there is no evidence presented in this proceeding at all for this court to make that determination. I believe that the burden is on the state to show that these are stolen. We have put this at issue. Neither our complaint nor the amended complaint have been answered yet. The issue has not been joined on the issue of whether they are stolen and we believe they have the burden of proof of proving that they are in fact stolen.

THE COURT: I don't think so. You are asking for affirmative injunctive relief, you have the burden of showing that you will probably be successful on the merits.

MR. CLARK: Yes, your honor. We're saying if they are stolen they are acting in such a way to completely disregard the health of the saguaros.

THE COURT: Yeah, I understand what you are saying.

MR. CLARK: I'm saying on the issue of them being stolen we have not had any opportunity for a hearing in regard to that issue. And in regard to at least one of them we expect that the evidence is faulty, and in regard to the others we're still investigating.

Neither the Wallaces nor the Commission presented evidence or made an offer of proof on whether the eight saguaros were in fact stolen property or not.

After argument, the trial court granted the Commission's motions to dissolve the temporary restraining order and dismiss the amended complaint. The trial court stated:

On the question of whether the director of the Arizona Commission on Agriculture and Horticulture is a law enforcement officer; again I'm not sure of the answer and I'm not sure it makes any difference. He is either an officer of the law enforcing a public statute for the public benefit, or he is an officer of the law in the exercise of a public office in a lawful manner. Since he has the enforcement powers I tend to think he is probably a law enforcement officer.

I recognize there may be issues, but I think pursuant to A.R.S. section 12–1802 this court cannot enjoin him from doing what the law empowers him to do.

And in reviewing the complaint I don't think the complaint states a cause of action for which the Court can grant relief.

Looking at the allegations of the amended complaint, and the record can reflect the amended complaint as accepted and filed, the allegations are that the

defendant got a search warrant, identified and tagged eight saguaros which were identified as being stolen or having been stolen. There is some question of the proof of ownership of one of the saguaros. There apparently is no question alleged in the complaint about the proof of ownership of the other seven. If there is no allegation that—well, strike that. Assuming that the State is wrong and takes one that they shouldn't take, there is a remedy at law in damages.

I recognize these saguaros are extremely rare, and it's tragic to lose any of them, and in that respect it seems as though both parties are on the same side here, you are both interested in protecting these plants. But in our society I think that the death of a saguaro is compensable in money damages. I think that same issue goes to Mr. Wallace's property. If they damage any of your other plants when they come to get the stolen saguaros, then you have an adequate remedy at law by seeking money damages for that damage.

The allegation in the complaint that the Plaintiff did not know the saguaros were stolen is irrelevant in the sense it doesn't provide a—a claim to those saguaros superior to that of the State.

The allegation and the proof that if the saguaros are moved they will probably die is a sad but irrelevant fact and if that were to be a defense all the thief would have to do would be to put the saguaros in the ground and then they couldn't be moved and that result doesn't make any sense.

As to the remaining allegations in the complaint about the defendant's unreasonableness, I don't know the background facts and I don't make any statement about whether that is true or even if it is true that also is irrelevant to the defendant's enforcement of the law.

Finally, the following exchange took place:

MR. CLARK: Your Honor, one question I do have is that the law which was submitted to you, to your Honor, specifically the *Williams v. Superior Court in and for the County of Pima Case,* 1972, 108 Ariz. at 154, 494 P.2d at 26 says that the questions here are fact questions; if the question of irreparable damages is a fact question, if the acts of public officers are exercised in a lawful manner within statutory powers so as to prevent the enjoining of the act, it is a fact question.

With that in mind, my clients are now being denied their day in court on the fact question. That is my concern with Your Honor's decision.

THE COURT: In some instances they could be fact questions. As I read the complaint there is no fact question from the face of the complaint. Even if what you say is proved you don't prevail. You are seeking to enjoin the Defendant and Defendant was attempting to enforce a law. That can't be done. I will cite an old Arizona case, *Francis v. Allen,* 54 Ariz. 377, [96 P.2d 277]. They're serious issues and well litigated, but there is no relief from the Court in terms of an injunction on this Complaint.

The trial court entered a formal judgment of dismissal on August 8, 1990. The Wallaces timely appealed.

The trial court initially stayed the execution of the judgment and fixed a supersedeas bond of $100,000.00. The Commission later moved for reconsideration of the stay order. After briefing and argument, the trial court granted reconsideration and vacated the stay.

The Wallaces filed a special action in this court. *Wallace v. Superior Court,* No. 1 CA–SA 90–0212. By order of September 26, 1990, this court denied the Wallaces' application for an interlocutory stay, stating: "The court is of the opinion that pursuant to A.R.S. section 12–1802, it is not empowered to grant the stay."[2] The same day, the Wallaces filed a special action in the supreme court. *Wallace v. Court of Appeals,* No. CV 90–0373–SA. By order of

2. The Commission urges that the appellate court special action pleadings submitted by the Wallaces as Appendices U through Y to the Opening Brief are not part of the record on appeal, are irrelevant, and must be stricken. We cannot agree that these documents are irrelevant. Further, we may take judicial notice of the public records of this court or the supreme court

**173**

September 28, 1990, the Vice Chief Justice of the Arizona Supreme Court issued the following order:

It appears from reading the amended complaint filed in the trial court that the allegations, liberally construed, could be interpreted to assert a possessory right or ownership to the cacti in question, unless the State produces evidence to establish that the cacti were not tagged as required by statute or were stolen.

It appears further from the allegations of the petition for special action that there is a danger of irreparable damage if a stay is not granted and that enforcement of the warrant will result in the taking of a unique, extremely fragile property that may be irreparably damaged or destroyed by the very act of seizure. Because such a seizure without an evidentiary hearing as to the possessory claim of entitlement may be within the exceptions to A.R.S. section 12–1802, now, therefore,

IT IS ORDERED that a stay of execution of the search warrant issued in the justice court will be granted on presentation of a proper form of stay order. The stay order may be in the form entered by Judge Noyes and conditioned with a bond in the amount and with the conditions ordered by Judge Noyes.

On October 3, 1990, the supreme court issued a stay order directing the trial court to take no further action to dissolve the stay granted on August 8, 1990, and holding the Wallaces' supreme court special action in abeyance until the court of appeals had resolved the Wallaces' special action and this appeal.

## ANALYSIS

### I.

*Did A.R.S. Section 12–1802(4) and (6) Preclude the Superior Court from Issuing Injunctive Relief Against the Commsssion's Efforts to Enforce the Arizona Native Plants Act?*

█ A.R.S. section 12–1802 provides in pertinent part:

An injunction shall not be granted:

. . . .

4. To prevent enforcement of a public statute by officers of the law for the public benefit.

. . . .

6. To prevent the exercise of a public or private office in a lawful manner by the person in possession.

This statute does not prevent the superior court from granting injunctive relief against public officials who act illegally, exceed their statutory authority, or arbitrarily or unreasonably exercise their discretion. *State ex rel. Berger v. Myers*, 108 Ariz. 248, 495 P.2d 844 (1972); *Zeigler v. Kirschner*, 162 Ariz. 77, 781 P.2d 54 (App. 1989); *Rivera v. City of Douglas*, 132 Ariz. 117, 644 P.2d 271 (App.1982). The question whether a public official is acting legally and within his power, such that A.R.S. section 12–1802(4) or (6) would preclude injunctive relief, is normally a question of fact. *Williams v. Superior Court*, 108 Ariz. 154, 158, 494 P.2d 26, 30 (1972); *Zeigler*, 162 Ariz. at 84, 781 P.2d at 61.

### II.

*Did the Wallaces' Verified Amended Complaint and Attachments Provide Evidence from which Injunctive Relief Could Reasonably be Found Appropriate?*

█ The focal point of the Wallaces' legal position in the trial court and on appeal is their allegation that the eight crested saguaros "will surely perish" if they are removed from the Wallaces' property and again transplanted. The Wallaces argue that in the face of this, the Commission's decision to reject their remonstrations and counterproposals, including their application for a scientific permit, conflicted with the underlying protective purpose of the Arizona Native Plants Act. They conclude

where appropriate. *See generally* Udall, Livermore, Escher and McIlvain, *Arizona Practice—Law of Evidence*, § 152 at 331 (1991).

that the Commission's threatened actions could reasonably be enjoined as arbitrary and capricious. *State ex rel. Berger v. Myers*, 108 Ariz. 248, 495 P.2d 844 (1972).

We cannot agree. Contrary to the Wallaces' argument, Dr. Dimmitt's testimony fell far short of establishing that retransplanting the saguaros would, by itself, be certain to kill them. As the Commission points out, Dr. Dimmitt testified that the state would be capable of using the same kind of underground watering system the Wallaces were using and that, in any event, it was too early to tell if underground watering would actually save the cacti from the effects of their first transplantation.

Further, nothing in the record supports the Wallaces' contention that the Commission's failure to give them written permission to keep the saguaros "for scientific purposes" pursuant to A.R.S. section 3–908(E) was arbitrary and capricious. The announced legislative purposes behind A.R.S. section 3–901 *et seq.* include protecting native Arizona plants not only from "overdepletion" and "unnecessary destruction," but also from "theft...." 1989 Ariz.Sess.Laws Ch. 294, § 2(3).

Finally, assuming the fact were proved that the eight crested saguaros were stolen property, the Wallaces would in any event have lacked standing to seek to enjoin action by the Commission to return them to their lawful owners. As a matter of law, the Commission's seizure and threatened removal of the eight crested saguaros was not outside the A.R.S. section 12–1802(4) and (6) ban on injunctions.

### III.

*Did A.R.S. Section 3–931(C) as Applied Here Violate the Wallaces' Due Process Rights?*

Due process is a fundamental constitutional guarantee; its purpose is to protect persons and property rights from the arbitrary action of government or public officials. *Bennett v. Arizona State Bd. of Public Welfare*, 95 Ariz. 170, 172, 388 P.2d 166, 168 (1963); *Banks v. Arizona State*

*Bd. of Pardons & Paroles*, 129 Ariz. 199, 200, 629 P.2d 1035, 1036 (App.1981). Due process rights are guaranteed in the Arizona Constitution at Art. 2, section 4: "No person shall be deprived of life, liberty, or property without due process of law." This guarantee is congruent with the U.S. Constitution, amendments 5 and 14. *State v. Superior Court (Roper)*, 172 Ariz. 232, 836 P.2d 445 (App.1992). Due process requires minimum notice requirements depending on the situation of the owner or interested party. *Mervyn's, Inc. v. Maricopa County Superior Court*, 144 Ariz. 297, 300, 697 P.2d 690, 693 (1985). Furthermore, an opportunity to be heard at a meaningful time in a meaningful manner is mandated. *McClanahan v. Cochise College*, 25 Ariz.App. 13, 18, 540 P.2d 744, 749 (1975); *Bennett v. Arizona State Bd. of Pub. Welfare*, 95 Ariz. 170, 388 P.2d 166 (1963); *Banks v. Arizona State Bd. of Pardons and Paroles*, 129 Ariz. 199, 629 P.2d 1035 (App.1981). *Bennett* and *Banks* hold that a statute which does not provide for a hearing denies an applicant due process of law. The Arizona Native Plants Act does not provide for a hearing prior to a warrantless seizure of property; and therefore, the statute denied the Wallaces their right to due process of law.

When the subject to which a statute relates is within the scope of legislative power, the test of the statute's validity within the police powers of the government is whether the ends sought to be attained are appropriate and the regulations imposed are reasonable. *Myerson v. Sakrison*, 73 Ariz. 308, 313, 240 P.2d 1198, 1201 (1952); *Campbell v. Superior Court*, 106 Ariz. 542, 546, 479 P.2d 685, 689 (1971). The test of reasonableness is whether the regulation makes efficient constitutional guarantees and conserves rights, or is destructive of inherent rights. *Myerson*, 73 Ariz. at 313, 240 P.2d at 1201. Thus the legislature may make such provision as it deems proper for the preservation and conservation of game animals, fish and native plant life within the state as long as the regulation is reasonable and does not deny due process and equal protection of the

law. *Begay v. Sawtelle,* 53 Ariz. 304, 306, 88 P.2d 999, 1000 (1939).

The Wallaces assert that the record contains "not a scintilla of evidence that these saguaros are stolen property" and contend that the trial court erred in dismissing their amended complaint for injunctive relief without according them a hearing on that and other issues.

In response, the Commission asserts that the Wallaces' amended complaint reflects no belief on the Wallaces' part that they are the legitimate owners of the eight cacti and that their counsel's letter of July 30, 1990, essentially conceded that the cacti were stolen. The Commission therefore argues that the Wallaces had no property interest in the cacti protectable under the due process clause. The Commission also points out that A.R.S. section 13–3922 provides the putative owner of property seized under a search warrant with an opportunity to contest the warrant before the magistrate who issued it. The Commission argues that this procedure was sufficient to satisfy due process in this case.

We cannot agree with the Commission that the Wallaces had no interest protectable under the due process clause. Although the Wallaces discussed the cacti in question as if they were stolen property in the context of a letter seeking settlement of their ongoing dispute with the Commission, they repeatedly disputed that issue in the instant litigation. Moreover, even though the Wallaces' amended complaint does not expressly allege the ownership of the cacti, the Arizona Supreme Court's then Vice Chief Justice Feldman (now Chief Justice) concluded as follows in staying execution of the Commission's search warrant pending the instant appeal:

> It appears from reading the amended complaint filed in the trial court that the allegations, liberally construed, could be interpreted to assert a possessory right or ownership to the cacti in question, unless the State produces evidence to establish that the cacti were not tagged as required by statute or were stolen.

We must also disagree with the Commission's view that the procedures pro-vided by the statutes applicable in this case comported with due process. The requirements of procedural due process in this context are reasonably well settled:

> [F]or the requirements of due process to be met, it is necessary that the statute authorizing preliminary relief provide that the relief issue only after there has been an application made under oath alleging personal knowledge of facts which form the basis for prejudgment seizure, and after the application has been approved by a competent officer acting judicially who has found that the requisite showing has been made.
>
> Additionally, due process requires that the statute authorizing relief afford the debtor an opportunity for an immediate, or at least a prompt, hearing after seizure....

16D *C.J.S.* Constitutional Law § 1145, at 23–24. *See generally Thornton v. Carson,* 111 Ariz. 490, 533 P.2d 657 (1975); *Bennett v. Arizona State Bd. of Public Welfare.* Due process also requires that, at the post-seizure hearing, the party at whose instance the seizure was made demonstrate at least the probable validity of the claim on which the seizure was founded. *See Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *North Georgia Finishing Co. v. Di–Chem,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Jonnet v. Dollar Savings Bank,* 530 F.2d 1123 (3d Cir.1976); *Searles v. First Nat'l Bank of Arizona,* 127 Ariz. 240, 619 P.2d 749 (App.1980). *Cf. Connecticut v. Doehr,* —— U.S. ——, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) (tacitly reaffirming *Mitchell* and *North Georgia Finishing Co.*)

A.R.S. section 3–931(C) falls short of meeting these requirements. The statute provides no opportunity for a prompt post-seizure hearing at which the Commission is required to demonstrate the probable existence of grounds for the seizure. Moreover, contrary to the Commission's argument, the hearing procedure available under A.R.S. section 13–3922 does not cure the deficiency. Our supreme court has held that, when items have been seized

under a search warrant, the individual who challenges the seizure, not the state, has the burden of proof at a hearing under section 13–3922. *Greehling v. State*, 136 Ariz. 175, 665 P.2d 57 (1983). The seizure and threatened confiscation to which the Wallaces were subjected accordingly violated their due process rights and were therefore illegal and subject to being enjoined. *See State ex rel. Berger v. Myers*, 108 Ariz. at 250, 495 P.2d at 846 (A.R.S. section 12–1802 does not prevent injunction against state official who acts illegally). The trial court erred in dissolving the temporary restraining order and dismissing the Wallaces' amended complaint.

By not providing for a meaningful or substantial hearing, A.R.S. section 3–931(C) contravenes Art. II, section 4 of the Arizona Constitution, and therefore, must fail. We hold that A.R.S. section 3–931(C) is unconstitutional as applied to the Wallaces because it failed to guarantee due process. In so deciding we need not decide whether the statute is unconstitutional because it authorizes unlawful searches and seizures. We reverse and remand to the trial court for further proceedings, not inconsistent with this decision.

### IV.

#### *Attorney's Fees*

The Wallaces request an award of attorney's fees on appeal pursuant to A.R.S. section 12–348. The Commission does not respond. We grant the request pursuant to A.R.S. section 12–348(A)(4) ("special action proceeding brought by the party to challenge an action by the state against the party"), subject to the limitations imposed by A.R.S. section 12–348(E). The Wallaces may establish the amount of their award by complying with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

Reversed and remanded for proceedings consistent with this opinion.

VOSS, P.J., and McGREGOR, J., concur.