258 P.3d 208

**STATE of Arizona, Appellee,**

v.

**David Paul STOCKS, Appellant.**

**No. 1 CA–CR 09–0870.**

Court of Appeals of Arizona, Division 1, Department B.

June 9, 2011.

---

Thomas C. Horne, Attorney General by Kent E. Cattani, Chief Counsel, Criminal Appeals Section and Kelly J. Morrissey, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James H. Haas, Maricopa County Public Defender by Edith M. Lucero, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

WEISBERG, Judge.

¶1 David Paul Stocks ("Defendant") appeals from the trial court's order denying his "Motion to Order Arizona Department of Corrections to Observe Restitution Order." For reasons that follow, we affirm.

## PROCEDURAL HISTORY

¶2 In 1999, Defendant was convicted of fraudulent schemes and artifices and two counts of forgery. He was resentenced after his first appeal to concurrent prison terms, the longest of which was 15.75 years. The court ordered him to pay restitution in the amount of $7,205, and consistent with former Arizona Revised Statutes ("A.R.S.") section 31–254(D) and (E), ordered that "payment shall be 30% of Defendant's *earnings* while incarcerated at the Department of Corrections." Defendant also was ordered to pay not less than $100 per month toward restitution upon his release. After Defendant's second appeal, the superior court reduced the amount of restitution to $3,500, payable in the same manner. In a delayed third appeal, this court rejected Defendant's argument

that retroactive application of A.R.S. § 31-254, authorizing the thirty percent deduction from his prison wages, violated the federal and state constitutional prohibitions against ex post facto laws.

¶ 3 On August 29, 2008, the Department of Corrections ("DOC") posted a notice at the prison regarding court-ordered restitution. The notice stated that amended A.R.S. § 31-230(C) (Supp.2010) now mandated that if "the court has ordered the prisoner to pay restitution pursuant to 13-603, the director [of DOC] shall withdraw a minimum of twenty percent, or the balance owing on the restitution amount, up to a maximum of fifty percent of the *monies available* in the prisoner's spendable account[1] each month to pay the court ordered restitution."[2] The notice also stated that "[t]he Department will continue to comply with the terms of court ordered restitution when contrary to the statute," and that "[a]s of Tuesday, August 12, 2008, *all deposits* into the spendable account of an inmate who has been ordered by a court to pay restitution will have 20% deducted for restitution pursuant to A.R.S. § 31–230 unless the court ordered otherwise." Nonetheless, despite the thirty percent withdrawal of earnings ordered by the court, DOC began withdrawing twenty percent of all monies available in Defendant's spendable account, including gifts from his relatives, pursuant to A.R.S. § 31–230(C).

¶ 4 In March 2009, Defendant filed an inmate grievance challenging the statutory deductions required by A.R.S. § 31–230(C). He complained because DOC was withdrawing twenty percent of all monies deposited into his spendable account pursuant to statute and claimed that DOC could only withdraw thirty percent from his earnings pursuant to the court's order. A DOC employee responded that, "it is beyond my realm of authority to change the amount of deductions it has been determined that you are responsible for," and that DOC "was not having more money deducted from your account than is authorized."

¶ 5 Defendant then filed in the superior court a "Motion to Order Department of Corrections to Observe Restitution Order." He claimed that retroactive application of this statute violated the prohibition against ex post facto laws and that it was contrary to the court's restitution order. He alleged that DOC's implementation of A.R.S. § 31–230(C) caused hardship to him and to his family who put money into his spendable account for "basic living necessities" and medical supplies not provided by DOC.[3] Defendant did not provide information about the amounts gifted by his family, the amounts withdrawn from his account pursuant to the statute, or a comparison of the amounts withdrawn before and after the DOC notice.

¶ 6 Defendant's appointed counsel filed a supplemental reply memorandum in which she contended that Defendant's procedural due process rights were violated because he did not have notice and an opportunity to be heard before the funds were withdrawn pursuant to A.R.S. § 31–230(C). She also asserted that DOC's notice indicated it would "continue to comply with the terms of court-ordered restitution when contrary to the statute" and that by removing funds from Defendant's spendable account under the new schedule, DOC was violating its own policies. The State responded and after a hearing, the court denied Defendant's motion. Defendant timely appealed. We have jurisdiction pursuant to A.R.S. § 13–4033(A)(3)(2010).

## DISCUSSION

### Due Process Right to Pre-deprivation

---

1. A prisoner's spendable account includes "[a]ll monies that are received by a prisoner and that are not required to be deposited in another account." A.R.S. § 31–230(A). The account includes monetary gifts received from a prisoner's family.

2. In 2007, the legislature amended A.R.S. § 31–254(D) and (E) to delete those provisions that had authorized DOC to apply thirty percent of a

prisoner's wages to payment of court-ordered restitution. At the same time, the legislature added subsection (C) to A.R.S. § 31–230. 2007 Ariz. Sess. Laws, ch. 140, §§ 1, 2.

3. The allegation that Defendant and his family have suffered hardship as a result of DOC's action was not supported by specific facts or independent evidence.

**Hearing[4]**

¶ 7 Defendant first contends that under the Fourteenth Amendment to the United States Constitution and Article 2, § 4 of the Arizona Constitution, he was entitled to prior notice and a pre-deprivation hearing before DOC could take money from his spendable account pursuant to the amended A.R.S. § 31–230(C). To establish a due process claim, a person must have a protectable property interest. *Shelby School v. Ariz. State Bd. of Educ.*, 192 Ariz. 156, 168, ¶ 55, 962 P.2d 230, 242 (App.1998). Before the state may deprive a person of such an interest, due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Wallace v. Shields*, 175 Ariz. 166, 174, 854 P.2d 1152, 1160 (App.1992). However, such hearings need not always be held *before* the related deprivation. *Id.* at 175, 854 P.2d at 1161.

¶ 8 "The procedural protections required by the Due Process Clause [are determined by] reference to the rights and interests at stake in the particular case." *Washington v. Harper*, 494 U.S. 210, 229, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Gilbert v. Homar*, 520 U.S. 924, 930, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). Courts must consider (1) the private interests affected; (2) "the risk of an erroneous deprivation ... through the procedures used, and the probable value, if any, of additional" procedures; and (3) the governmental interests, including fiscal and administrative burdens, if other procedural safeguards are imposed. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The issue of what process is due is a question of law. *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir.1985).

¶ 9 Relying on *State v. O'Connor*, 171 Ariz. 19, 827 P.2d 480 (App.1992), Defendant asserts that he has a protectable property interest in the funds held by DOC in his spendable account and a due process right to notice and a hearing before DOC may withdraw money from it. The prisoner in *O'Connor* also had an inmate account. *Id.* at 20, 827 P.2d at 481. DOC placed a restitution lien on the account and later disbursed $22,893.91 to the clerk of the superior court, who in turn disbursed most of those funds to a victim. *Id.* The prisoner argued that his due process rights were violated when DOC placed a lien on his trust account and then, without notice or pre-deprivation hearing, disbursed the funds. *Id.* at 23, 827 P.2d at 484. We held that merely recording a restitution lien did not deprive the prisoner of his property interest, to which due process would apply, but that the prisoner was entitled to both notice and a pre-deprivation hearing before DOC could seize and distribute funds from his trust account. *Id.*

¶ 10 In response, the State concedes in this case that Defendant has a protected property interest in the funds in his spendable account. *See Zuther*, 199 Ariz. at 111, ¶ 24, 14 P.3d at 302 (prisoner has property rights in earned wages that implicate due process); *Mahers v. Halford*, 76 F.3d 951, 954 (8th Cir.1996) (prisoner has protected property interest in money held in prison account received from outside sources). However, the State distinguishes *O'Connor* from this case because, here, DOC withdrew the funds "pursuant to duly authorized legislative action." The State argues that in *O'Connor*, unlike here, DOC took money out of the prisoner's trust account without statutory authority to do so and without following any statutory procedures.

¶ 11 The State instead relies on *Halverson v. Skagit County*, 42 F.3d 1257, 1260 (9th Cir.1994), to support its position. In *Halverson*, pursuant to state legislation, Skagit

---

4. In his brief, Defendant mentions, but does not develop the argument that A.R.S. § 31–230(C) cannot be applied retroactively to him. To the extent he claims that retroactive application violates the prohibition against ex post facto laws, we reject that contention as the statute does not increase the punishment or aggravate the crime.

*State v. Beltran*, 170 Ariz. 406, 407, 825 P.2d 27, 28 (App.1992). Further, it is not so punitive in purpose or effect so as to constitute punishment. *Zuther v. State*, 199 Ariz. 104, 111–12, ¶ 26–27, 14 P.3d 295–96, 302 (2000) (citing *State v. Noble*, 171 Ariz. 171, 175, 829 P.2d 1217, 1221 (1992)).

County implemented a system of levees and dikes that diverted water into various municipal and agricultural areas. The system caused flooding, and the ninety residents whose homes and property were damaged sought relief under 42 U.S.C. § 1983. *Id.* at 1259. Plaintiffs argued, among other things, that procedural due process required individual notice and a hearing before the County could effect a taking and divert additional flood waters into the affected areas. *Id.* at 1259–60. The Ninth Circuit Court of Appeals disagreed. Noting that the County did not direct the operation of the levee system at specific properties, the court held that "due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law," *id.* at 1260, and that "governmental decisions which affect large areas and are not directed at one or a few individuals" do not require individual notice and a pre-hearing. *Id.* at 1261 (citations omitted). The court concluded that general notice that the system could divert flood waters, which was "disclosed" and "displayed … in public documents and during public proceedings," was sufficient to satisfy due process. *Id.* at 1261. The court also rejected the plaintiffs' substantive due process claim that the County was required to compensate them *before* appropriating their property. *Id.* at 1262. Finally, the court noted that because plaintiffs could file an inverse condemnation action to recover the value of their appropriated property, they had an adequate post-taking remedy, and that their due process rights therefore had not been violated. *Id.* at 1262–63.

¶ 12 We agree with the State that, although not identical, this case is more like *Halverson* than *O'Connor*. Here, the substance of the proposed statute was disclosed during the legislative process, and the statute was not directed at any specific individuals, but rather to a large number of persons. Accordingly, *Halverson* suggests that Defendant was not entitled to individual notice and a pre-deprivation hearing before the State could apply the legislative amendment to him because general notice and a post-deprivation hearing were sufficient.[5] *But see Wal-*

*ters v. Grossheim,* 525 N.W.2d 830 (Iowa 1994) (holding that prisoner had right to one-time, informal protest procedure before prison authorities could deduct monies from his inmate account). However, although *Halverson* is helpful, we must next consider Defendant's due process rights in the specific context of DOC's taking of his funds pursuant to A.R.S. § 31–230(C).

¶ 13 In determining what process is due under the statute, we note that although prisoners have protected property interests in their prison wages, states may enact statutes that "limit and define the contours" of such interests. *Ward v. Ryan,* 623 F.3d 807, 811 (9th Cir.2010). Thus, A.R.S. §§ 31–254(D), (E) and 31–230 "delineate mandatory deductions from inmates' accounts," give DOC "explicit authority to regulate inmate usage of the funds," and "establish a framework under which inmates' property interest in their wages is limited." *Id.* at 812. Also, although prisoners have an interest in their personal funds from outside sources, they "are not entitled to complete control over [that] money while in prison." *Mahers,* 76 F.3d at 954. Moreover, in the context of required restitution, a deduction from a prisoner's funds to pay restitution is merely a restriction on the freedom to use the money in a particular way, but is not an absolute deprivation of the benefit of the money. *Id.* at 955.

¶ 14 Furthermore, there is a strong governmental interest in making victims whole by requiring criminal defendants to pay restitution. A.R.S. § 13–603(C) (2010); *State v. Lindsley,* 191 Ariz. 195, 197, 953 P.2d 1248, 1250 (App.1997). To that end, the legislature has provided a comprehensive statutory scheme for collecting restitution "to insure that maximum efforts are expended to obtain payment of restitution." *State v. Moore,* 156 Ariz. 566, 568, 754 P.2d 293, 295 (1988).

¶ 15 Here, after Defendant became aware of DOCs implementation of the amended statute, and well after its adoption by the

---

5. Defendant does not argue that he is entitled to monetary damages as a result of DOC's action; he merely claims that DOC violated his procedural due process rights.

legislature, he pursued a DOC grievance procedure. When that failed, he filed a motion in the trial court challenging the statute and DOC's action on several grounds. Defendant thereby had the opportunity to present all of his objections to both DOC and the trial court.[6]

¶ 16 Under these circumstances, due process does not require prior notice and a pre-deprivation hearing before DOC may withdraw the funds; the post-deprivation rights afforded Defendant were sufficient. We reach this conclusion because Defendant's property interest in his spendable account is limited, and DOC did not deprive him of his money but simply allocated a percentage of it toward payment of restitution, thereby reducing his restitution obligation. *See Mahers,* 76 F.3d at 955 (When an inmate leaves prison with restitution debts, "[a]ny payment of those debts while the inmate is incarcerated will work to his ultimate benefit."). Given a prisoner's limited property interest and adequate post-deprivation rights, there is little risk of a permanent erroneous deprivation. *See Reynolds v. Wagner,* 128 F.3d 166, 180 (3rd Cir.1997)(where deduction from inmate account "is fixed, non-punitive assessment," little danger of prison authorities abusing power to make unauthorized deductions).

¶ 17 Of course, in this case, Defendant has not shown that he has suffered any erroneous deprivation by the post-deprivation process or that pre-deprivation notice and a hearing would have made a difference. Nor has he shown that even if he had been wrongly deprived of funds, he would not have been adequately compensated by subsequent money damages.[7] Moreover, even if prior notice and hearing had served some purpose, it would be impractical and costly to require a pre-deprivation hearing for every inmate impacted by A.R.S. § 31–230(C). *See Tillman v. Lebanon Cnty. Corr. Facility,* 221 F.3d 410, 422 (3rd Cir.2000) (where assessments taken from prison accounts were "routine matters of accounting, with a low risk of error" and the requirement of pre-deprivation hearings would significantly increase costs, post-deprivation procedure was adequate). We therefore conclude that Defendant's post-taking rights afforded him due process. *See Buck v. Beard,* 834 A.2d 696, 699 (Pa.Commn.Ct.2003) (where corrections department was authorized by state statute to deduct twenty-percent from an inmate's account to pay for court costs, fines and restitution, no prior notice or hearing was required).

## Violation of DOC Rules and Regulations

■ ¶ 18 Defendant next contends that DOC failed to follow its own rules and regulations when it ignored the portions of its notice that stated that it would follow the court's order regarding the payment of restitution in the event the order conflicted with the statute. He concludes that DOC's actions were therefore unlawful. Although Defendant is correct that DOC's notice, at best, was incorrect and misleading, DOC was nonetheless required by A.R.S. § 31–230(C) to withdraw the designated funds from Defendant's spendable account. Thus, despite the defects in the notice, DOC was required to follow the statute rather than its notice. Also, Defendant does not argue that he relied upon the inaccurate notice to his detriment or that any error in the notice could not have been cured by a post-deprivation process.

---

6. As the relief requested by Defendant was an order compelling DOC to take certain action, he should have filed a petition for special action against DOC and its director as named parties. However, because the assistant attorney general representing DOC appeared below and on appeal, we decline to dismiss the appeal on that ground.

7. We note that implementation of A.R.S. § 31–230(C) by DOC decreased the amount withdrawn from Defendant's wages from thirty percent to twenty percent. As to that change, for now, Defendant has not suffered a deprivation that implicates due process concerns. Our record does not reflect how much DOC has withdrawn from Defendant's account that was attributable to gifts from his family, or whether such withdrawals, when coupled with the reduced withdrawals from his prison earnings, have had a negative impact on his available funds. Because of Defendant's failure to set forth the amounts taken before and after DOC's application of the amended statute, we cannot be certain that Defendant in fact has been harmed.

¶ 19 Furthermore, although Defendant argued below that the notice was insufficient for due process purposes, he did not argue below that the taking was improper because the notice contravened DOC rules and regulations. By not making the argument below, Defendant has failed to preserve the issue on appeal. *State v. Lopez,* 217 Ariz. 433, 435, ¶ 6, 175 P.3d 682, 684 (App.2008).

### Conflict Between Statute and Court Order

¶ 20 Defendant also asserts that A.R.S. § 31–230(C) infringes upon the court's powers afforded by A.R.S. § 13–603(C) (2010), which provides that the court "shall require the convicted person to make restitution" to the victim "in the full amount of the economic loss as determined by the court and in the manner as determined by the court."[8] *See also* A.R.S. § 13–804(E) (2010) (in determining amount of restitution, the court "shall specify the manner in which restitution is to be paid"). He claims that neither the legislature nor DOC may vary the terms of the applicable court order. We, however, disagree because although the court was empowered to set the total amount of restitution due, it had no statutory authority to order the manner in which restitution was to be paid while Defendant was in prison or to order DOC to deduct specific amounts from Defendant's inmate accounts contrary to statute.

¶ 21 The power of the court is limited by statute, and the court cannot order an agency to take action in excess of its statutory authority. *State v. Peruskov,* 166 Ariz. 28, 32, 800 P.2d 15, 19 (App.1990) (trial court had no statutory power to order DOC to garnish an inmate's funds). Thus, "[c]ourts have the power to impose sentences only as authorized by statute and within the limits set down by the legislature." *State v. Harris,* 133 Ariz. 30, 31, 648 P.2d 145, 146 (App.1982). The legislature "has distributed the authority to control the sentence so that the court [and] the department of corrections . . . each serves its purpose, and within its specified sphere of competence, individualizes

the sentence." *Id.* Generally, the judiciary's function ends with the entry of final judgment and sentence, and "legal authority over the accused passes by operation of law to the Department of Corrections" which is "guided by detailed administrative rules and regulations" to carry out its executive function. *State v. Wagstaff,* 164 Ariz. 485, 488–89, 794 P.2d 118, 121–22 (1990). *See Mahers,* 76 F.3d at 956 ("Courts are not ideally situated to oversee the minute details of prison administration.") (citing *Procunier v. Martinez,* 416 U.S. 396, 405, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974)).

¶ 22 The degree to which an agency can exercise power "depends upon the legislature's grant of authority to the agency." *Facilitec, Inc. v. Hibbs,* 206 Ariz. 486, 488, ¶ 10, 80 P.3d 765, 767 (2003). Here, in addition to A.R.S. § 31–230(C), the legislature has given DOC express statutory authority to establish and maintain various inmate accounts with specific and detailed directives relating to the amounts that must be deducted from each of them and the order in which monies in those accounts must be distributed. *See* A.R.S. § 31–254(Supp.2010).

¶ 23 Although A.R.S. §§ 13–603(C) and 13–804(E) give the court authority to determine the manner in which restitution is to be paid when a defendant is not in the custody of DOC, neither statute vests the trial court with authority to control, manage or disburse monies deposited in a defendant's accounts while he is in prison or the power to order DOC to deduct monies from inmate accounts contrary to DOC's comprehensive statutory obligations. *See Dupnik v. MacDougall,* 136 Ariz. 39, 44, 664 P.2d 189, 194 (1983) (sentencing statute vests superior court with authority to commit a prisoner to the Department of Corrections, but DOC, not the court, is vested with statutory authority under A.R.S. § 41–1604 to designate the facility where the prisoner is to be taken into custody); *State v. Peralta,* 175 Ariz. 316, 318, 856 P.2d 1194, 1196 (App.1993) (court could order probationer to complete shock incarceration program in DOC under former A.R.S. § 13–

8. We note that the court order refers only to Defendant's earnings. It does not mention gifts made to his spendable account.

915 but could not order DOC to retain him in the program); *Harris,* 133 Ariz. at 31, 648 P.2d at 146 (sentencing court could not order DOC to release defendant at certain time contrary to statute); *accord State v. Collins,* 122 Ariz. 550, 551–52, 596 P.2d 385, 386–87 (App.1979) (under former Arizona statutes, although the juvenile court had statutory authority to commit juvenile to DOC, trial court had no authority to order juvenile's "conditional commitment" to DOC and then later order that the juvenile be released from DOC).

¶ 24 Therefore, to the extent that the court order specifies the manner in which restitution is to be paid from Defendant's wages while he is in prison and conflicts with the applicable statutes, it is of no effect. *Cf. State v. Payne,* 223 Ariz. 555, 568–69, ¶¶ 47–49, 225 P.3d 1131, 1144–45 (App.2009)(trial court had no power to order defendant to pay statutorily unauthorized prosecution fee and that portion of sentence invalid); *Jackson v. Schneider,* 207 Ariz. 325, 327–28, ¶¶ 10–11, 86 P.3d 381, 383–84 (App.2004)(if trial court exceeds statutory authority in sentencing, that portion of sentence not authorized by statute is void).[9]

**Source of Funds**

¶ 25 Finally, Defendant argues that some of the money in his account came from gifts from his family and therefore should not be subject to the mandatory deduction for restitution. But once such gifts are made, those funds belong to Defendant, not to his family members. *See Neely v. Neely,* 115 Ariz. 47, 51, 563 P.2d 302, 306 (App.1977) (valid gift transfers title, possession and control of property to recipient). As such, they are subject to the provisions of A.R.S. § 31–230(C). *See State v. Glassel,* 226 Ariz. 369, 371, ¶ 11, 248 P.3d 217, 219 (App.2011) (holding that A.R.S. § 31–230(C) does not create an exemption for monies gifted to a prisoner's spendable account).

**CONCLUSION**

¶ 26 For the foregoing reasons, we affirm the trial court's order denying Defendant's "Motion to Order Arizona Department of Corrections to Observe Restitution Order."

CONCURRING: DONN KESSLER, Presiding Judge, and DIANE M. JOHNSEN, Judge.

---

**9.** Although Defendant argues on appeal that implementation of A.R.S. § 31–230(C) violates the state constitutional principle of separation of powers, because he did not make this constitutional argument below, he has not preserved the issue on appeal. *State v. Calabrese,* 157 Ariz. 189, 191, 755 P.2d 1177, 1179 (App.1988) (failure to raise state constitutional claim below waives issue on appeal).