IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, ex rel.,
DEPARTMENT OF ECONOMIC SECURITY,
*Petitioner/Appellee*,

*v.*

JOSE TORRES,
*Respondent/Appellant*.

No. 1 CA-CV 17-0695 FC
FILED 10-30-2018

Appeal from the Superior Court in Maricopa County
No.  FC2001-001384 FC
The Honorable Ronee F. Korbin Steiner, Judge
The Honorable Brian S. Rees, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Carol A. Salvati
*Counsel for Petitioner/Appellee*

Law Office of Stacy Scheff, Tucson
By Stacy Scheff
*Counsel for Respondent/Appellant*

## OPINION

Presiding Judge Diane M. Johnsen delivered the opinion of the Court, in which Judge Maria Elena Cruz and Judge Randall M. Howe joined.

**J O H N S E N**, Judge:

¶1        Jose Torres, an inmate in the state prison system, owed more than $20,000 in child support arrears. After his mother wired a gift of $120 into his inmate trust account, the Arizona Department of Economic Security ("ADES") issued a withholding order seizing most of it and sent the money to the child-support clearinghouse. Torres argues non-wage monies in an inmate's account may not be seized for child support and contends the withholding order violated his due-process rights. For the following reasons, we affirm the superior court's judgment denying Torres's appeal of the administrative action.

## FACTS AND PROCEDURAL BACKGROUND

¶2        In 2001, the superior court ordered Torres to pay $173 a month in child support for his son and $2,941 in arrearages that had accumulated since the child was born the year before. In 2011, the court learned Torres was incarcerated and terminated his monthly child support obligation pursuant to Arizona Revised Statutes ("A.R.S.") section 25-503(E) (2018).[1] The court's order, however, noted, "Arrears are still owed."

¶3        In November 2016, Torres's mother wired $120 into his inmate trust account. By that time, and even though Torres's monthly payments had been terminated, he owed child-support arrearages of $20,645. Days later, acting under Title IV-D of the Social Security Act, 42 U.S.C. §§ 651-669, ADES issued a Limited Income Withholding Order that directed the Arizona Department of Corrections ("ADC") to withhold an unspecified amount from Torres's account for application against his arrearages. ADC withheld $90.07 from Torres's account, and he requested administrative review. Torres argued the order was improper because he was incarcerated

---

[1]        Absent material revision after the relevant date, we cite the current version of a statute or rule.

and did not have custody of his son. ADES issued a final determination denying his challenge.

¶4        Torres appealed the ADES determination to the superior court. ADES moved to dismiss Torres's appeal, arguing its order was proper under A.R.S. § 25-505(A) (2018). Torres responded that A.R.S. § 31-254 (2018) controls the withholding of an inmate's funds for child support and does not allow seizure of funds a prisoner receives as a gift. The superior court granted the motion to dismiss and Torres timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) (2018), -913 (2018) and -2101(A)(1) (2018). *See Svendsen v. Ariz. Dep't of Transp., Motor Vehicle Div.*, 234 Ariz. 528, 533, ¶ 13 (App. 2014).

## DISCUSSION

### A.    Section 31-254 Does Not Bar Use of a Withholding Order to Take an Inmate's Non-Wage Monies for Child Support.

¶5        The interpretation of a statute is a matter of law that we review *de novo*. *See State ex rel. Dep't of Econ. Sec. v. Hayden*, 210 Ariz. 522, 523, ¶ 7 (2005). In construing a statute, we give effect to each word and construe related statutes together. *Id.* We give a statute's words their "usual and commonly understood meaning unless the legislature clearly intended a different meaning." *See Bilke v. State*, 206 Ariz. 462, 464-65, ¶ 11 (2003). If a statute's language is clear, we apply it without using other methods of statutory interpretation. *See id.* at 464, ¶ 11.

¶6        The statute on which Torres relies, A.R.S. § 31-254, establishes a pay schedule for work performed by inmates and mandates specified deductions from an inmate's pay, including "[t]hirty percent of the prisoner's wages for court ordered dependent care." A.R.S. § 31-254(D)(4). As Torres points out, there is no provision in § 31-254 for the withholding of non-wage monies from an inmate's account for child support. Torres argues that because § 31-254 mandates that child support be taken from an inmate's wages but does not specify any other deductions for child support, no other funds in an inmate's account can be taken for child support.

¶7        Under A.R.S. § 25-504 (2018), a party owed child support is entitled to an assignment of the obligor's "income" and may obtain an order withholding a specified amount from the obligor's monthly wages. A.R.S. § 25-504(A), (B). The legislature broadly has defined "income" for this purpose as "any form of payment owed." A.R.S. § 25-500(6) (2018). As stated, when the obligor is an inmate who earns income – wages – while

incarcerated, § 31-254 expressly provides that 30 percent of those wages be deducted for child support.

**¶8** The order at issue here, however, was not directed at Torres's wages pursuant to §§ 31-254(D)(4) and 25-504. Instead, it was a one-time "limited" withholding order issued pursuant to § 25-505. That statute does not apply to regularly recurring income, but instead authorizes issuance of a withholding order to "any employer, payor or other holder of a nonperiodic or lump sum payment that is owed or held for the benefit of an obligor." Under § 25-505, a "holder" of such a payment may be required to "withhold . . . and transmit" the specified funds to the support clearinghouse. A.R.S. § 25-505(D).

**¶9** Although § 31-254(D)(4) mandates what may be taken from an inmate's *wages* for child support pursuant to § 25-504, it imposes no limits on what may be taken pursuant to § 25-505 from a "*nonperiodic or lump sum payment*" in an inmate's account. Nor do other provisions in the statutory regime support Torres's contention that the wage deduction specified in § 31-254 impliedly precludes any other withdrawal for child support under § 25-505. To the contrary, A.R.S. § 25-521 (2018) empowers ADES to levy "on all property and rights to property not exempt under federal or state law" to collect support arrearages, and Torres cites no legal exemption shielding an inmate's trust account from that broad power. Further, the legislature has mandated that child-support obligations "may be enforced by all civil and criminal remedies provided by law" and that remedies available under Chapter 5 of Title 25 "are cumulative and do not affect the availability of [other] remedies." A.R.S. § 25-501(D), (E) (2018).

**¶10** Torres contrasts § 31-254 with A.R.S. § 31-230(C) (2018), which requires ADC to withdraw a specified percentage of funds in an inmate's "spendable account" to satisfy the inmate's restitution obligation. Torres argues the legislature's failure to enact a comparable statute specifically granting ADES the power to take non-wage funds from an inmate's account for child support means that ADES must lack that power. Given the broad authority the legislature has granted ADES under §§ 25-501 and -521 to collect past-due child support, however, no specific provision addressing inmates' trust accounts is required. For the same reason, we reject Torres's contention that penological interests and ADC policy reasons should constrain ADES's power to take funds from an inmate's account. *See, e.g., Rasmussen v. Munger*, 227 Ariz. 496, 499, ¶ 12, n.2 (App. 2011) (when statute is plain, court will not construe it otherwise because of policy determinations that are for the legislature to decide).

4

**B.  ADC Was a Holder of a Lump Sum Payment Under A.R.S. § 25-505.**

¶11  Torres also argues the withholding order ADES issued to ADC was improper because his mother's gift was not a "lump sum payment" under § 25-505(E).  As stated, under § 25-505, ADES may issue a withholding order "to any employer, payor or other holder of a nonperiodic or lump sum payment that is owed or held for the benefit of an obligor." The statute defines neither "nonperiodic" nor "lump sum," but subsection (E) states:

¶12  For the purposes of this section, "lump sum payment" includes:

1.  Severance pay.

2.  Sick pay.

3.  Vacation pay.

4.  Bonuses.

5.  Insurance settlements.

6.  Commissions.

7.  Stock options.

8.  Excess proceeds.

9.  Retroactive disability proceeds.

10.  Personal injury awards.

¶13  "Nonperiodic payment" and "lump sum payment" both have ordinary meanings.  The former is a payment made once, or intermittently, but not "periodically" or regularly.  The latter is a payment made all at once, not in installments.  Notwithstanding Torres's argument to the contrary, under the plain meaning of the statute, his mother's gift was a single payment made all at once, and thus was a "lump sum payment" under that term's ordinary meaning.[2]

---

[2]  Neither ADES nor Torres addresses whether the gift was a "nonperiodic payment."

**¶14** In arguing otherwise, Torres contends the term "lump sum payment" means *only* the types of payments listed in § 25-505(E). But subsection (E) states that "lump sum payment *includes*" the listed forms of payments, and "[t]he word 'includes' is most often a term of enlargement, rather than limitation." *Tracy v. Superior Court of Maricopa Cty.*, 168 Ariz. 23, 35 (1991). In other words, when the legislature does not define a term, but states that the term "includes" specified items, we construe the term to also include other items that fall within the term's ordinary meaning. *See id.* at 35, citing 2A N. Singer, *Sutherland Statutory Construction* § 47.07, at 133 (4th ed. 1984 Rev.).

**¶15** Careful review of other relevant statutes further undercuts Torres's contention that § 25-505(E) contains an exhaustive list of what "lump sum payment" means. We construe statutes that are related to the same subject matter as though they constitute one law. *See Hayden*, 210 Ariz. at 523, ¶ 7. Elsewhere in the support-collection statutes, the legislature has used the verb "means" to state a term's only meaning, while using "includes" to introduce a non-exclusive list. *Compare* A.R.S. § 25-522(G)(1) (2018) ("'[b]usiness day' means a day on which state offices are open for regular business") *with* A.R.S. § 25-522(G)(2) ("'[d]epartment' includes the department's agent"). *See also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 226 (2012) ("When a definitional section says that a word 'includes' certain things, that is usually taken to mean that it may include other things as well . . . . When, by contrast, a definitional section says that a word 'means' something, the clear import is that this is its *only* meaning.").

**¶16** Torres further argues that a "lump sum payment" must be a payment *owed* to the recipient – not a gift – because all the items listed in § 25-505(E) are "moneys either earned or owed to a recipient." As noted above, § 25-504 authorizes withholding of an obligor's "income" for child support. *See* A.R.S. §§ 25-504(H) ("employer or other payor who has received any order of assignment shall withhold the amount specified . . . from the income of the person obligated to pay support), -500(6) ("'Income' means any form of payment owed to an individual, regardless of source, including wages, salaries, commissions, bonuses, workers' compensation, disability payments, [retirement payments] and interest").

**¶17** But § 25-505(A), the source of the withholding order here, expressly applies not only to a "payment that is owed" to the obligor but also to a payment "held for the benefit of" the obligor. By the same token, the statute authorizes issuance of an order not only to an obligor's employer (compelling withholding from a "payment that is owed" to the obligor) but

also to a "holder" of a payment that has been made to an obligor, whether "owed" or not. A.R.S. § 25-505(A). "[W]e assume that when the legislature uses different language within a statutory scheme, it does so with the intent of ascribing different meanings and consequences to that language." *Parker v. City of Tucson*, 233 Ariz. 422, 428, ¶ 12 (App. 2013). By this reasoning, we conclude that "lump sum payment" as used in § 25-505 can include any payment made in a lump sum, "owed" to the obligor or not.

¶18        Torres further argues it was improper to allow seizure of funds his mother sent him as a Christmas gift. Arizona law, however, affords ADES the full panoply of remedies to enforce a child-support arrearage. If Torres's mother had wired her gift to his bank account, ADES could have garnished the bank account. *See* A.R.S. § 25-521, -524 (2018); *see also Huggins v. Deinhard*, 134 Ariz. 98, 103 (App. 1982); A.R.S. § 12-1570.01 (2018). If he were not incarcerated and she had sent him cash that he used to buy property, ADES could perfect a lien on the property. A.R.S. § 25-516(A) (2018). If he kept the cash in a drawer at home, ADES could seize the money there. A.R.S. § 25-521(A). Thus, the only issue is whether ADES properly used a withholding order in this instance, not whether ADES could reach the gift by any means.

¶19        In sum, the gift Torres's mother sent him was a lump sum payment, and once the money reached his inmate trust account, ADC became a "holder . . . of a lump sum payment that is . . . held for the benefit of an obligor." *See* A.R.S. § 25-505(A). ADES thus had authority to issue the withholding order to ADC, which thereafter was obligated to withhold and transmit the money to the clearinghouse. *See* A.R.S. § 25-505(A), (D).

**C.    Torres's Due-Process Rights Were Not Violated.**

¶20        Torres finally argues the transfer of money out of his inmate trust account before a hearing violated his due-process rights under the United States Constitution. Although Torres did not raise this issue when he sought administrative review by ADES, we have discretion to consider constitutional issues raised for the first time on appeal. *See Dombey v. Phoenix Newspapers, Inc.*, 150 Ariz. 476, 482 (1986) ("Instances in which we exercise this discretion [to hear issues not raised before an appeal] include issues . . . of constitutional dimension.")

¶21        Torres raises no challenge, nor could he at this point, to the orders establishing his monthly child support obligation and the amount of arrearages that accumulated after he failed to pay. He only challenges the process accorded him with respect to the withholding order by which

ADES seized the $90.07 from his inmate trust account. Torres received notice of the withholding order 10 days after ADES issued it and sought and was granted an administrative appeal from the order. Pending final resolution of the matter, the support clearinghouse is holding the funds at issue. *See* Ariz. Admin. Code R6-7-701(H)(3)(b). Torres, however, argues he was entitled to a hearing before the money was taken from his account.

**¶22** Although "due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner[,] . . . such hearings need not always be held *before* the related deprivation." *State v. Stocks*, 227 Ariz. 390, 394, ¶ 7 (App. 2011). Due-process protections are flexible and can vary, based on the interests at stake in a particular case. *Id.* at 394, ¶ 8 (quoting *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) and *Washington v. Harper*, 494 U.S. 210, 229 (1990)).

**¶23** The Due Process Clause of the Fourteenth Amendment of the United States Constitution "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the [clause]." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In resolving a due-process challenge, courts must consider: (1) "the private interests . . . affected"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Eldridge*, 424 U.S. at 335. Whether due process has been satisfied is a question of law that we decide *de novo. See Wassef v. Ariz. State Bd. of Dental Exam'rs*, 242 Ariz. 90, 93, ¶ 11 (App. 2017).

**¶24** The private interest at stake here is Torres's property interest in the money taken from his account. Given Torres's obligation to pay the accumulated child-support arrearages, however, his property interest in the money that was taken is reduced by the fact that the withholding order was "merely a restriction on [Torres's] freedom to use [his] money in a particular way" and "not an absolute deprivation of the benefit of the money." *Stocks*, 227 Ariz. at 395, ¶ 13 (addressing deduction from inmate's account to satisfy restitution order). In contrast, the governmental interest is strong, given that a parent's "obligation to pay child support is primary." A.R.S. § 25-501(C). Additionally, the State has a duty to enforce such obligations in order to "relieve or avoid the burden often borne by the general citizenry through public assistance programs." *See* A.R.S. § 46-401 (2018). Finally, Torres does not say how or why a pre-deprivation hearing would have resulted in a different outcome than the administrative review he received.

Based on this weighing of the interests, the procedure afforded to Torres did not violate his rights to due process.

## CONCLUSION

**¶25**      For the reasons stated above, we affirm the superior court's order dismissing Torres's appeal from ADES's final determination upholding the withholding order.



AMY M. WOOD • Clerk of the Court
FILED:  AA