NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

RAYMOND CONROY, *Plaintiff/Appellant*,

*v.*

JACKIE HUTCHINSON; STATE OF ARIZONA, *Defendants/Appellees*.

No. 1 CA-CV 20-0394
FILED 3-2-2021

Appeal from the Superior Court in Maricopa County
No. LC2020-000040-001
The Honorable Michael W. Kemp, Judge

**AFFIRMED**

COUNSEL

Raymond Conroy, San Luis
*Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Marjorie S. Becklund
*Counsel for Defendants/Appellees*

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which
Judge Cynthia J. Bailey and Judge Lawrence F. Winthrop joined.

**M c M U R D I E**, Judge:

¶1        Raymond Conroy appeals the superior court's decision dismissing his special-action petition for public records. Finding no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        For years, Conroy, an inmate in the Arizona Department of Corrections ("ADOC" or "the Department"), submitted public-record requests to ADOC requesting various documents. The Department provided some, but not all, documents. Conroy filed a special action petition in the superior court per A.R.S. § 39-121.02, arguing that the Department's denials violated A.R.S. § 39-121.

¶3        In its response, the Department argued that it properly denied the requests. Specifically, it asserted that it refused his request for a department employee's personnel file (Erwin) due to safety concerns and confidentiality. It denied his request for all documents in the Tucson facility associated with Conroy's criminal investigation because A.R.S. § 31-221(C) and (E) exclude disclosure of a prisoner's file except for an automated summary record. It denied his request for a list of all "serious/significant incident reports" from January 1, 2019, to October 1, 2019, because the request was vague, and the Department does not maintain a list of incident reports. It denied his request for all records generated and used at a disciplinary hearing dated October 7, 2019, because Department Order 803 deems confidential disciplinary hearing records.

¶4        The Department denied Conroy's request for a file related to another department employee (Richter) because employee personnel files are confidential, and the request was for information rather than records. The Department denied his request for Richter's disciplinary records, citing security concerns. Also citing security concerns, it denied three requests from December 2019 through January 2020, seeking records related to an investigation of Richter for conducting an unlawful traffic stop, an incident on December 30, 2019, in which Conroy alleged an inmate was given the wrong medication and a "racial riot" at the Yuma Prison complex.

¶5        The Department granted Conroy's request for records detailing the current amount of money in the Inmate Store Proceeds Fund. It also granted a request for an ADOC paralegal's contract made on July 15, 2018, and received on October 31, 2018. However, the request concerning the paralegal's contract was closed on April 12, 2019, because neither

Conroy nor an agent came to retrieve or pay for the documents related to that request.

**¶6** In its response in the superior court, the Department alleged that Conroy made the requests to harass it. To support this allegation, the Department attached two letters, one dated October 2019 and the other March 2020. In the October letter, Conroy warned that "more and more requests [were] forthcoming" until Conroy was returned to a prison unit in Tucson and that further requests would also follow if he were transferred again. In the March letter, Conroy wrote that he planned to make "MANY MORE public records requests" now that he no longer had access to a television. In his reply, Conroy requested a hearing to resolve any factual disputes.

**¶7** In an unsigned order, the court found that the Department provided Conroy with all legally required public records and dismissed Conroy's petition. The court ordered Conroy to stop filing frivolous public-record requests and noted that the Department need not respond to further inquiries from Conroy "unless the request is lawful or ordered by the Court."

**¶8** Conroy moved for clarification of the court's order seeking: (1) a signed minute entry so he could appeal the decision; (2) a hearing to rebut the Department's allegations of security issues in court or an *in camera* review of the requested files; (3) all government records that do not discuss ongoing investigations; and (4) clarification of the court's meaning of "lawful" and identification of the court that may order the Department to grant a request. The court denied the motion. Conroy appealed. This court revested jurisdiction to the superior court so it could consider signing an order with a finality certification according to Arizona Rule of Civil Procedure 54(c). The court issued a final judgment under Rule 54(c). We have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 12-2101(A)(1), and Arizona Rule of Procedure for Special Actions 8(a).

## DISCUSSION

**¶9** Conroy argues that the court's ruling was erroneous because it: (1) was vague and ambiguous as it did not specify which public-record requests are "lawful" or which "court" may order the Department to comply with further requests; (2) violated A.R.S. § 39-121 by prohibiting Conroy from filing additional requests without authorization; (3) dismissed Conroy's petition without a hearing or an *in camera* review, and (4) violated Conroy's due-process rights under Article 2, Section 4 of the Arizona

Constitution by failing to hold a hearing or otherwise allow Conroy to defend the lawfulness of his requests. Conroy requests a remand with instructions to the superior court to hold a hearing on the public records requested.

¶10        All records required to be kept under A.R.S. § 39-121.01(B) are presumed to be open to the public for inspection as public records. *Carlson v. Pima County*, 141 Ariz. 487, 491 (1984). However, some public records are confidential and should not be disclosed to the public. The custodian of public records must deny inspection when the requested record is made confidential by statute, *Berry v. State*, 145 Ariz. 12, 13–14 (App. 1985), or when a legitimate government consideration of privacy and the best interests of the State outweigh the public's interest in disclosure, *Scottsdale Unified Sch. Dist. No. 48 v. KPNX Broad. Co.*, 191 Ariz. 297, 300, ¶ 9 (1998). Whether a document is a public record or whether a denial of access to a public record was wrongful are issues of law that we review *de novo*. *Lunney v. State*, 244 Ariz. 170, 174, ¶ 6 (App. 2017); *Phx. Newspapers, Inc. v. Ellis*, 215 Ariz. 268, 271, ¶ 13 (App. 2007). Otherwise, we review a superior court's decision for abuse of discretion. *W. Valley View, Inc. v. Maricopa County Sheriff's Office*, 216 Ariz. 225, 227, ¶ 7 (App. 2007).

## A.        The Order Was Not Vague or Ambiguous.

¶11        Conroy argues that the superior court's order was vague or ambiguous because it permitted the Department to ignore his inquiries unless they were lawful or ordered by a court. Specifically, he argues that the order should have defined when an inquiry was "lawful" and stated which court may order the Department to respond to Conroy's inquiries.

¶12        The order is not vague or ambiguous. The Department is required to follow the law and provide appropriate responses to public-record requests. In other words, the Department must comply with "lawful requests." Likewise, if a public-record applicant believes a public agency has failed to comply with a lawful request, he or she may file a special action with the superior court to seek relief by court order, precisely as Conroy did in this case. The court did not err, and although the order directed Conroy not to file "frivolous" requests, it does not require Conroy to seek permission before he submits a lawful public-record request.

## B.        The Superior Court Did Not Err by Dismissing Conroy's Petition Without A Hearing or *In Camera* Review.

¶13        Conroy argues that the superior court erred by failing to allow him to defend his requests and asserts he is entitled to a hearing to address

each public-record request or an *in camera* review of the records. We review the superior court's decision regarding whether to hold an evidentiary hearing for an abuse of discretion. *Duckstein v. Wolf*, 230 Ariz. 227, 233–34, ¶ 19 (App. 2012). We defer to a superior court's findings of fact unless they are clearly erroneous. *KPNX*, 191 Ariz. at 302, ¶ 20.

**¶14** Where the facts of a case "raise a substantial question as to the threshold determination of whether the document is subject to the statute, the court must first determine whether that document is a public record." *Griffis v. Pinal County*, 215 Ariz. 1, 5, ¶ 13 (2007) (internal quotation omitted). If the statute applies, there is a presumption for disclosure, but a "court can perform a balancing test to determine whether privacy, confidentiality, or the best interests of the state outweigh the policy in favor of disclosure." *Id.; Lunney*, 244 Ariz. at 179, ¶ 29.

**¶15** Any person may inspect "[p]ublic records and other matters in the custody of any officer." A.R.S. § 39-121. This principle applies to records of prisoner care and custody. Still, the Department may not disclose records or portions of documents that would reveal a confidential informant's identity, endanger a person's life or physical safety, or jeopardize an ongoing criminal investigation. *See* A.R.S. § 31-221(A), (C). Inmates may access their own automated summary record files but may not access any other prisoner's records. *See* A.R.S. § 31-221(D), (E).

**¶16** Here, the Department correctly rejected Conroy's request for documents in the Tucson facility associated with a criminal investigation. *Aros v. Robinson*, No. CV-04-306-PHX-SRB (LOA), 2011 WL 13302091, at *2 (D. Ariz. Sept. 19, 2011) (unpublished order) (citing to A.R.S. § 31-221(E) and denying a motion to compel the release of "Inmate Disciplinary Report ('IDR'), Result of Discipline Hearing form ('RDH'), and Reclassification Score Sheets"). For the same reason, Conroy was not entitled to his request dated January 3, 2020, seeking information on an incident where an inmate was allegedly given the wrong medication or his request dated January 15, 2020, seeking documents associated with a "racial riot."

**¶17** Furthermore, the Department was not required to create new categories of information. *See ACLU v. DCS*, 240 Ariz. 142, 150, ¶ 23 (App. 2016) ("The superior court correctly recognized the ACLU's outstanding requests were asking DCS to tally and compile aggregate information contained in CHILDS-information that DCS had not previously tallied and compiled."). Because the Department does not differentiate which of its incident reports are "serious" or "significant," it was entitled to reject Conroy's request for "serious/significant incident reports."

5

**¶18** Similarly, the Department need not provide records based on requests for information about information. *Lunney*, 244 Ariz. at 177, ¶ 23 ("A distinction exists between 'searching an electronic database to produce existing records and data' and 'searching an electronic database to compile information about the information it contains.'") (quoting *ACLU v. DCS*, 240 Ariz. at 149, ¶ 18). Thus, the Department was not required to provide information concerning whether one of its employees is a law enforcement officer.

**¶19** Because the Department denied many of Conroy's public-record requests by raising security concerns rather than citing categorical exclusions from A.R.S § 39-121's disclosure requirement, a court must balance the security concerns against Arizona's policy favoring disclosure. *Griffis*, 215 Ariz. at 5, ¶ 13. Such a balancing test typically involves *in camera* review. *See Mitchell v. Superior Court*, 142 Ariz. 332, 334 (1984) (noting that reviewing courts "have asked trial courts to make *in camera* inspections of the relevant documents and balance the rights of the parties"); *cf. Griffis*, 215 Ariz. at 3 (holding that when a "government entity withholds documents generated or maintained on a government-owned computer system on the grounds that the documents are personal, the requesting party may ask the trial court to perform an in camera inspection to determine whether the documents fall within the public records law").

**¶20** Regarding Conroy's request for a list of records generated and used at a disciplinary hearing on October 7, 2019, the Department asserted that this information is confidential because such hearings are confidential under Arizona Department of Corrections, Department Order 803. This order does not control whether a confidentiality concern outweighs public-record law. *See Mathews v. Pyle*, 75 Ariz. 76, 80–81 (1952) (concluding that the state does not have the final authority to determine whether a record is confidential). Nonetheless, the court reasonably deferred to the Department's regulation insofar as it addressed internal security. *See Kane v. Lewis*, 931 F.2d 896 (9th Cir. 1991) (unpublished table decision) ("Prison administrators have broad discretion to implement policies and practices designed to ensure the safety of the inmates and staff within a facility."); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) (assigning to prison regulations a lower degree of constitutional scrutiny "reasonably related to legitimate penological interests"). Such departmental policies can form an independent basis for withholding lawfully requested public records when introducing those records into a prison threaten "legitimate penological interests." *See, e.g.*, *Livingston v. Cedeno*, 186 P.3d 1055, 1057–58, ¶ 9 (Wash. 2008) (A department of corrections complied with a statutorily mandated release of a public-record request when it mailed the records,

gave the plaintiff notice that the mail would be rejected so he may have it forwarded to a different address, and then intercepted them once they reached the correctional facility pursuant to its policy of confiscating materials that threaten to "undermine the security and order of the facility.").

**¶21**　　　　Here, the issues concern an inmate's access to documents relating to other inmates and staff personnel, heightening security concerns. *See, e.g.*, *Md. Restorative Justice Initiative v. Hogan*, No. CV 16-01021-ELH, 2018 WL 5026369, at *2–4 (D. Md. Oct. 17, 2018) (mem. opinion) (requiring as a condition of discovery that prisoners and former prisoners may not access "case records" designated as confidential and containing descriptions and photographs of inmates, inmate family history, previous records of inmates, summaries of cases for which inmates serve sentences, and records of physical, mental, and educational examinations); *Brew v. Johnson*, No. 1:04-CV-05445-LJO-GSA-PC, 2008 WL 686433, at *7 (E.D. Cal. Mar. 11, 2008) (nonpublished order) (Defendants need not answer an interrogatory from inmate seeking the number of personnel and correctional officers who had been reprimanded or terminated for smuggling tobacco "on the basis of public policy favoring employees' privacy" where defendants raised security and confidentiality issues based on legal protections specific to correctional staff.). As such, the Department established a *prima facia* basis to deny the requests.

**¶22**　　　　Conroy was required to demonstrate a need for the requested information to overcome the Department's objection to disclosure for security and privacy concerns. *See Lake v. City of Phoenix*, 222 Ariz. 547, 551, ¶ 15 (2009) (In determining whether to release suspect information, the court may consider concerns related to privacy, confidentiality, or the state's best interests.). Conroy argues that a hearing was necessary to establish why he required the information and respond to the Department's security and privacy assertion. However, Conroy has put the proverbial cart before the horse. He was required to state a reason for the requests to establish a colorable claim before the court was required to hold a hearing. The only evidence before the superior court regarding why Conroy needed the information indicated the request was made to harass the Department.

**C.**　　**The Superior Court Did Not Violate Conroy's Right to Due Process.**

**¶23**　　　　Article 2, Section 4 of the Arizona Constitution provides that "[n]o person shall be deprived of life, liberty, or property without due process of law." Due process requires notice and an opportunity to be heard

in a meaningful time and manner. *State v. Stocks*, 227 Ariz. 390, 394, ¶ 7 (App. 2011); *Iphaar v. Indus. Comm'n*, 171 Ariz. 423, 426 (App. 1992). "We review constitutional claims de novo." *Emmett McLoughlin Realty, Inc. v. Pima County*, 212 Ariz. 351, 355, ¶ 16 (App. 2006), *as corrected* (Mar. 9, 2006).

**¶24** Conroy argues that he was denied the opportunity to defend each public-record request individually. He further contends that the court denied him the chance to show why he asked for the public records. But he addressed both matters in his special-action petition and reply. As discussed above, substantial evidence—in the form of Conroy's letters—showed that Conroy's purpose was to harass the Department, and he asserted no legitimate basis for needing the requested information. The court did not err by refusing to grant Conroy a hearing.

## CONCLUSION

**¶25** We affirm the superior court's order.



AMY M. WOOD • Clerk of the Court
FILED: AA